552                        STATE *v.* JACKSON.                        [71

## STATE *v.* JACKSON.

The statute making penal the failure of a parent to send his child to school
was not intended to impair the inherent parental right of defence, and is
not in conflict with the constitution.

A parent who withdraws his child from school on account of the latter's ill-
health and in obedience to an apparently reasonable necessity, without first
obtaining the permission of the school board, is not thereby made subject
to the statutory penalty.

Upon the trial of a complaint against a parent for keeping his child from school
without first obtaining permission of the school board, evidence that the
pupil was in feeble health, that she was removed from school because the
respondent believed further attendance would be highly injurious, and that
the school board were so informed, is competent as tending to show the
existence of an apparently reasonable necessity for the withdrawal and
an attempted compliance with the statute.

APPEAL, from the judgment of a justice of the peace on a com-
plaint under section 14, chapter 93, Public Statutes, as amended
by section 1, chapter 61, Laws 1901. Trial by the court (*Stone, J.*)
by agreement, and verdict of guilty, which the defendant moved
to set aside for error in the rulings. Transferred from the March
term, 1902, of the superior court upon a bill of exceptions.

The defendant moved to quash the complaint on the ground
that the statute under which it was brought is unconstitutional.
The motion was denied, subject to exception.

The state's evidence tended to prove the following facts: The
defendant has the custody and control of his daughter Alice, aged
ten years. They reside in the school district of Tamworth in this
county, in which a public school is annually taught. Alice has
never been instructed in any private school approved by the school
board, and has not acquired the common English branches. She
has not attended the public school all the time it was in session,
and has not been excused from attendance by the school board.
No formal application was ever made for such excuse; and no
evidence as to the condition of the child, other than the statement
of the defendant to the school board, was ever offered to the board
until the day of trial.

The defendant offered evidence to show that Alice was in feeble
health; that he took her from school, believing in good faith that
her attendance at and confinement in school would seriously injure
her reason and health; that he so informed two members of the
school board before he removed her from the school, and offered

evidence of a physician that her confinement in the school would greatly endanger her life ; all of which evidence was excluded, and the defendant excepted.

*Edwin G. Eastman*, attorney-general, and *Sewall W. Abbott*, for the state.

*Arthur L. Foote*, for the defendant.

REMICK, J. 1. The motion to quash the complaint, on the ground that the statute upon which it was founded is unconstitutional, was properly denied. The statute is as follows : " Every person having the custody and control of a child between the ages of eight and fourteen years, residing in a school district in which a public school is annually taught, shall cause such child to attend the public school all the time such school is in session, unless the child shall be excused by the school board of the district because his physical or mental condition is such as to prevent his attendance for the period required, or because he was instructed in the English language in a private school approved by the school board, for a number of weeks equal to that in which the public school was in session, in the common English branches, or, having acquired those branches, in other more advanced studies. Any person who does not comply with the requirements of this section shall be fined ten dollars for the first offence and twenty dollars for every subsequent offence." P. S., c. 93, s. 14 ; Laws 1901, c. 61, s. 1.

That education of the citizen is essential to the stability of the state, is a proposition too plain for discussion. As a mere generalization of our own it would command immediate and universal assent. But it rests upon a firmer foundation. The constitution declares that " knowledge and learning, generally diffused through a community," are essential to the preservation of a free government. Const., art. 82. Nor does it stop with this abstract statement. It provides that " it shall be the duty of the legislators and magistrates, in all future periods of this government, to cherish the interest of literature and the sciences, and all seminaries and public schools." Const., art. 82.

Showing that something more than a mere sentimental interest was intended by the injunction " to cherish the interest of literature," etc., this court has said: " The clause in the constitution . . . in regard to the encouragement of literature, in connection with the early legislation on the subject, . . . shows conclusively, if any such evidence were needed, that the framers of the constitution, as well as their contemporaries in the legislature, regarded the

subject of education as one of public concern, to be cherished, regulated, and controlled by the state ; and the great multitude and variety of acts passed since show that no different view has ever been entertained. . . . The constitution enjoins the duty in very general and comprehensive terms, on magistrates and legislators, as one of paramount public importance." *Ladd,* J., in *Farnum's Petition,* 51 N. H. 376, 378, 379. It thus being the constitutional duty of the legislature to diffuse knowledge and learning through the community, it must be within the constitutional power of the legislature to enforce school attendance to that end. But the right is not left to implication. " Full power and authority are hereby given and granted to the said general court, from time to time to make, ordain, and establish all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions, either with penalties or without, so as the same be not repugnant or contrary to this constitution, as they may judge for the benefit and welfare of this state, and for the governing and ordering thereof." Const., *art.* 5.

Whether the statute in question is " wholesome and reasonable," within the meaning of the provision of the constitution last referred to, is a question over which the court has no control. " The ample authority conferred upon the legislature to make, ordain, and establish all manner of wholesome and reasonable orders, laws, and statutes, which it shall judge to be for the good and welfare of the commonwealth, necessarily invests that department of the government with the right of determining conclusively upon the propriety and reasonableness of all provisions which are not in some way repugnant to the constitution. *Commonwealth* v. *Williams,* 6 Gray 1, 3 ; *Orr* v. *Quimby,* 54 N. H. 590, 608. " The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power." Cool. Con. Lim. 201. " We have not to inquire into the policy of the law, or, if the purpose be admitted to be public, whether the supposed public good to be attained was sufficient to justify the legislature. . . . All mere questions of expediency, and all questions respecting the just operation of the law, within the limits prescribed by the constitution, were settled by the legislature when it was enacted. The court have only to place the statute and the constitution side by side, and say whether there is such a conflict between the two that they cannot stand together." *Ladd,* J., in *Perry* v. *Keene,* 56 N. H. 514, 530.

Being without brief or argument from the defendant, we are not advised upon what ground he asserts the unconstitutionality of the act. Certainly, it is not unconstitutional merely because, in

obedience to the mandate of the constitution, and for "the preservation of a free government," it interferes in some measure with the natural right of parental dominion. "When men enter into a state of society, they surrender up some of their natural rights to that society, in order to secure the protection of others" (Bill of Rights, *art. 3*), and subject themselves to innumerable restrictions and regulations for the common good. *State* v. *Express Co.*, 60 N. H. 219, 253, 254. But the surrender is not absolute. There are "certain natural, essential, and inherent rights" reserved by the constitution, and of which the citizen cannot be deprived by legislative enactment; rights "paramount to all governmental authority," and which no legislation can invalidate or abridge (*Wooster* v. *Plymouth*, 62 N. H. 193, 200; *State* v. *Jackman*, 69 N. H. 318); rights "higher and earlier in origin than the constitution or the common law, not superseded by those temporal and finite systems, but sustained and enforced by their declaration and sanction of the highest, primary, eternal, and infinite law of nature." *Aldrich* v. *Wright*, 53 N. H. 398, 400. Thus, "as a fundamental and essential right, the defence of life, liberty, and property is . . . put, by a special guaranty, above the altering and repealing power of the legislature." *Aldrich* v. *Wright*, 53 N. H. 398, 399. And so it was held, that one might lawfully kill a mink in defence of his geese, notwithstanding the existence of a statute providing that "no person shall in any way destroy . . . any mink, . . . under penalty of ten dollars for each animal so destroyed"; that the owner's "natural, common-law, and constitutional right of defence existed in full force and vigor, not repealed, nor in the slightest degree impaired or modified, by the statute"; that "he could exercise that right as fully and freely as if the statute had not been enacted." *Aldrich* v. *Wright*, 53 N. H. 398, 399, 400. For the preservation and propagation of fur-bearing animals, in the interest of society at large, the legislature had the undoubted right to prohibit their destruction, within a certain season, for purposes of sport, profit, or the like; but they could not repeal the constitutional right of defence. *Aldrich* v. *Wright*, 53 N. H. 398, 399, 400.

If statutory prohibitions and penalties are thus impotent to take away the inherent right of defence when invoked in behalf of one's geese, surely they must be so when the right is resorted to in defence of one's own life or that of his child. For the diffusion of knowledge and learning through the community, the legislature have the undoubted right, as against the mere will and pleasure of the parent, to require him to send his child to school; but they cannot repeal the natural, common-law, and constitutional right of the parent "to do whatever, apparently, is reasonably necessary to

be done in defence " of the life of his child.   If it was apparently reasonably necessary, in defence of his geese, that the owner should then and there destroy the mink, the legislature could not constitutionally require him to first get permission of the game warden.   So, if apparently reasonably necessary for a parent to keep or withdraw his child from school, in defence of the child's life, without first applying for excuse by the school board, the legislature cannot compel him to first make such application.   Of course, in case of complaint against a parent for withdrawing or detaining his child from school without excuse from the school board, the burden would be upon the accused to show that what he did was apparently reasonably necessary in defence of the child's life.   Failing, he would be amenable to the statute.   Succeeding, he would be exempt from its operation.   But upon this question of reasonable necessity, he would be entitled to the judgment of his peers.   A parent cannot be required to imperil the life of his child by delays incident to an application to the school board, before he can lawfully do what is apparently reasonably necessary for its protection.

The letter of the statute in question prohibits the parent from keeping or withdrawing his child from school, without consent of the school board, even when apparently reasonably necessary to do so in order to preserve the child's life.   To this extent the statute, taken literally, contravenes the constitutional right of defence to which we have referred.   But " as the legislature could not abol-. ish the right, they are not presumed to have attempted an impos- sibility, or to have intended to pass a void act; and the statute is held valid by giving it a construction compatible with the consti- tution, making it applicable only to those cases to which it can be constitutionally applied."   *Aldrich* v. *Wright*, 53 N. H. 398, 399. To illustrate:   One whose child is stricken by some malady, mak- ing detention from school reasonably necessary in defence of the child's life, breaks no law of this jurisdiction by hastening for doc- tors and nurses instead of to the board of education.   On the other hand, if he keeps his child from school merely to suit his own or his child's pleasure, or for any other reason not within the exceptions provided by the act or guaranteed by the constitution, he must suffer the penalty.   Indeed, as thus limited, the law is a decided invasion of the parental domain; but being repugnant to no provision of the constitution, and being for " the benefit and welfare of this state, and for the governing and ordering thereof," the citizen, in fulfillment of the social compact, must yield submis- sion and obedience.   *School Board* v. *Jackson*, 7 Q. B. Div. 502; *Burdick* v. *Babcock*, 31 Ia. 562, 568, 569, 570, 571; *Donahoe* v. *Richards*, 38 Me. 379, 391, 395, 396, 397; Schoul. Dom. Rel. 235.

The statute requires attendance "all the time . . . school is in session," and, as would appear, makes no provision for excuse excepting on account of the physical and mental condition of the child. Literally construed, the parent incurs its penalty who keeps his child from school a single day for any other cause, however imperative, even though it be to attend the mother's funeral. It is inconceivable that the legislature intended the act to have such sweeping effect.

Section 14, chapter 93, Public Statutes, required the parent to cause his child, if between the ages of eight and sixteen years, to attend school twelve weeks in each year, six of which should be consecutive. Under this statute, we are not aware that it was suggested that mere occasional and temporary absences could not be permitted by the school board for other causes than the physical or mental condition of the child. The statute in question amended that statute by substituting the entire school year for twelve weeks, as the compulsory attendance period, and made it apply to children between eight and fourteen, instead of between eight and sixteen years of age. In this view, it is reasonable to suppose that the words "all the time such school is in session" in the present statute, like the words "twelve weeks" in the statute which preceded it, were used for the purpose of establishing a compulsory attendance period in a general sense, and had no reference to occasional and temporary absence not inconsistent with the general design already indicated; but left such absence subject to any reasonable regulations the governing board might see fit to establish. P. S., c. 93, s. 6. See Laws 1901, c. 16, s. 7.

2. "The defendant offered evidence to show that Alice was in feeble health; that he took her from school, believing in good faith that her attendance at and confinement in school would seriously injure her reason and health; that he so informed two members of the school board before he removed her from the school, and offered evidence of a physician that her confinement in the school would greatly endanger her life; all of which evidence was excluded, and the defendant excepted." This evidence tended to show that the action of the respondent in withdrawing Alice from school was apparently reasonably necessary in defence of her life. It also tended to show an attempt by the respondent to comply with the law. The law is not adapted nor intended for formal action. Upon the evidence as stated, in the absence of objection or request for further action by the school officers, the defendant may have been justified in understanding that the school board did not object, and the jury may find that the child was in fact excused. It may also be found upon the evidence that the child was so unfit for school that the only reasonable result of any investigation by

the school board must have been her excuse from attendance. The statute was intended to secure the attendance of children who were able, not to confer arbitrary power upon the school board. To require a parent whose child was confined in bed during the year to apply for and secure an excuse, would be an idle formality. Such was not the purpose or intent of the law. The evidence was competent, and its exclusion was error.

*Exception sustained.*

All concurred.