CASE 66—PROSECUTION AGAINST THE CHESAPEAKE & OHIO RY. CO.
FOR FAILURE TO FURNISH SEPARATE COACHES FOR WHITE AND
COLORED PASSENGERS.—JAN. 24.

# Chesapeake & Ohio Ry. v. Commonwealth.

APPEAL FROM SHELBY CIRCUIT COURT—JAMES S. MORRIS, SPECIAL
JUDGE.

DEFENDANT CONVICTED AND APPEALS.   REVERSED.

CARRIERS—DUTY TO FURNISH SEPARATE COACHES FOR DIFFERENT RACES.
—STATUTES—EXCUSE—UNAVOIDABLE ACCIDENT—JURY QUESTION—
INDICTMENT—SUFFICIENCY.

1 Under Kentucky Statutes 1903, section 795, providing that
railroads doing business in the State shall furnish separate
coaches for white and colored passengers; section 796, declaring
that no discrimination shall be made in the .quality of such
coaches, and section 797, providing that the failure of a railroad
to comply with such provisions shall be deemed a misdemeanor—
an indictment substantially following the words of the statute
and alleging that defendant willfully and unlawfully failed to
furnish such coaches on a particular occasion, sufficiently charges
the commission of a public offense.

2. On a prosecution of a railroad under Kentucky Statutes 1903,
sections 795-797, for failure to furnish separate coaches for white
and colored passengers, where defendant alleged that such fail-
ure was caused by an accident preventing the attachment of a
separate coach to the train, an instruction that if the jury be-
lieved that the operation of a train without a separate coach,
marked and provided as required by law, was caused by an
unavoidable accident, which defendant, by ordinary prudence,
could not have guarded against, they should find defendant not
guilty, should have been given.

WILLIS & TODD, ATTORNEYS FOR APPELLANT.

1. We submit that the indictment in this case is insufficient,
there being no allegation that at the time named in the indict-
ment, or at any other time, the C. & O. Ry. Co. ever operated
a passenger train, or train for the transportation of passengers,
through Shelby county, and failed to have such train furnished
with separate coaches or cars.

2. It is a part of the current history of the country, and of general knowledge, that railroad companies are under the necessity to operate their trains over their lines for the transportation of passengers and of the mails, or suffer heavy penalties; and we submit that where it is shown from the evidence that the appellant was under both "necessity and compulsion" to send out its train, and it is further shown, from the evidence, that it was an impossibility, resulting from an unavoidable accident, for it to have supplied this train with the separate coach required by the law, such failure is a good defense to an indictment for an alleged violation of the statute.

3. The appellant, being under the "necessity and compulsion" to send out its train, it was entitled under the evidence to an instruction to the jury that "if they believe from the evidence that the operation of said train, without a separate coach or compartment car, was caused from an unavoidable accident or casualty they should find for the defendant."

### AUTHORITIES CITED.

Ky. Stat., secs. 795, 801; Cr. Code, sec. 122; Com. v. Tanner, 5 Bush, 316; Com. v. Turner, 8 Bush, 1; Conner v. Com., 13 Bush, 714; L. & N. R. R. Co. v. Com., 25 R., 1442; C. & O. Ry. Co. v. Com., 21 R., 228.

N. B. HAYS, ATTORNEY GENERAL, AND L. MIX, ATTORNEYS FOR APPELLEE.

1. We maintain that if the defect complained of in the indictment exists, it would not be such as to substantially prejudice appellant, and the failure of the lower court to sustain the demurrer to the indictment would not constitute a reversible error, (1) because the indictment should be construed liberally after verdict; (2) an indictment which charges a public offense is good after verdict; (3) no indictment is insufficient by reason of any defect which does not tend to prejudice the substantial rights of the defendant on the merits. Wilson v. Com., 22 R., 1251; Bronaugh v. Com., 2 R., 387; Baldin v. Com., 2 R., 439; Com. v. Kennedy, 15 B. Mon., 531; Com. v. Magowan, 1 Met., 368; Com. v. Kelcher, 3 Met., 485; White v. Com., 9 Bush, 179.

2. The evidence shows that the appellant's trains were frequently late, and knowing this fact, and inasmuch as wrecks and accidents frequently occur on railroad lines, we contend that appellant was negligent in failing to have facilities of some kind to provide separate coaches in such emergencies, and a failure to make such provision is no excuse for a violation of the

Chesapeake & Ohio Ry. Co. v. Commonwealth.

statute requiring appellant to provide such separate coaches or compartments, and therefore the instruction asked by appellant was properly refused by the court. Tabor v. Com., Ms. opinion, 1904; Allen v. Com., 86 Ky., 642.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

The appellant, Chesapeake & Ohio Railroad Company, was tried, convicted, and fined $500 in the Shelby circuit court, under an indictment charging it with having willfully and unlawfully failed to furnish for the transportation of white and colored passengers on its line of railroad a separate coach, each compartment divided by a good and substantial wooden partition with a door therein, and each bearing in some conspicuous place, in plain letters, appropriate words indicating the race for which it was set apart. Appellant asks a reversal of the judgment because of alleged error upon the part of the lower court, first, in overruling its motion in arrest of judgment; second, in failing to properly instruct the jury and refusing proper instructions offered by appellant.

Section 795, Kentucky Statutes, 1903, provides: "Any railroad company or corporation, person or persons, running or otherwise operating railroad cars or coaches, by steam or otherwise, on any railroad line, or track within this State, and all railroad companies, person or persons, doing business in this State whether upon lines of railroad owned in whole or in part, or leased by them, . . . are hereby required to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of railroad. Each compartment of a coach divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach within the meaning of this act, and each separate coach or compartment shall bear in some conspicuous place appropriate words

in plain letters indicating the race for which it is set apart."
Section 796 declares that no discrimination shall be made
in the quality, convenience, or accommodations of the
coaches set apart for white and colored passengers, and sec-
tion 797 provides "that any railroad company or companies,
that shall fail, refuse or neglect to comply with the pro-
visions of sections 795, 796, shall be deemed guilty of a
misdemeanor, and upon indictment or conviction thereof,
shall be fined not less than $500, nor more than $1,500, for
each offense." The evidence contained in the record con-
clusively shows that appellant did, on the 19th day of
February, 1903, operate a passenger train upon and over its
railroad in Shelby county, which did not have attached
or belonging to it a separate coach for the transportation
of white and colored passengers partitioned and otherwise
equipped as required by the statute. Indeed, no denial of
this fact is made by counsel for appellant, but it is con-
tended that the facts stated in the indictment do not con-
stitute a public offense within the jurisdiction of the court,
and, further, that the appellant on the day in question was
prevented by unavoidable accident and casualty from having
with and as a part of its train a separate coach for the
use of white and colored passengers as required by the stat-
ute, and as was its custom.

We are of opinion that the first contention is without
merit. The indictment in large measure follows the words
of the statute in describing, and in fairly appropriate lan-
guage sets forth with sufficient particularity the acts con-
stituting the offense, and that it was committed in Shelby
county on the 19th of February, 1903, and before the finding
of the indictment. We think the language of the indict-
ment was sufficiently explicit to apprise appellant of the
offense with which it was charged, and to bar a subsequent

prosecution against it for the same offence. The trial court, therefore, did not err in overruling the motion in arrest of judgment.

Appellant's second contention presents a more serious question, and one upon which this court has never passed. It appears from the record that appellant's passenger train for the running of which without the separate coach it was indicted in this case was known as "No. 22," and that it was scheduled to leave Louisville daily at 8:30 A M., and on February 19, 1903, it left Louisville at 8:30 A. M., as usual, but for the first time was carried through to Lexington without the separate coach. It also appears that another of appellant's trains, known as "No. 25," left Ashland daily at 1:20 P. M. for Louisville, and arrived at the latter city at 8:00 P. M. of the same day, and that this train was always provided with a separate coach for the transportation of white and colored passengers, equipped as required by the statute, which, after its arrival in Louisville, was transferred to and connected with train No. 22, due to leave Louisville at 8:30 A. M., and was used by the latter train daily. It further appears that train No. 25, instead of leaving Ashland February 18, 1903, at 1:20 P. M., its schedule time, which would have enabled it to reach Louisville at 8:00 P. M. of that day, was so delayed by a landslide east of Ashland that it did not leave that city until 12:14 A. M. of February 19th, which caused it to arrive at Louisville thirteen hours and thirty-one minutes behind its schedule time, or at 9:31 A. M. February 19, 1903, about one hour after train No. 22 left that city on its schedule time. In other words, the two trains met near Shelbyville. On account of the delay caused train No. 25 beyond Ashland, train No. 22 was on February 19, 1903, deprived of the use of the separate coach it was accustomed to receive from

train No. 25 before leaving Louisville, and its run that day
from Louisville east was consequently made without it, as
stated. The evidence for the Commonwealth established the
fact that on no other day than February 19th was train
No. 22 run through Shelby county without a separate coach
equipped and lettered as required by the statute, and the
further fact that there were no colored persons on the train
that day. It was shown, too, by appellant's testimony, that
it had and used beween Louisville and Ashland three sepa-
rate coaches equipped and lettered as required by the statute
for the transportation of white and colored passengers,
which had heretofore supplied the wants and convenience of
the traveling public, and that neither delay nor accident
had; previously to February 19, 1903, prevented train No.
25 from arriving at Louisville in ample time to attach the
separate coach to train No. 22 before the arrival of the
schedule time for its departure from that city.

Did the foregoing facts and circumstances excuse the
failure of appellant to have attached to the passenger train
in question a separate coach for the use of white and col-
ored passengers on the occasion named in the indictment?
In considering this question, it must be borne in mind that
appellant was required by statute to run its train, as well
as to provide it with the separate coach. Besides, it was
and is a common carrier, intrusted by the Federal Govern
ment with the duty of carrying the mails without unrea-
sonable delay. Its duty to the public requires regularity,
and promptness in the running of its trains, and it will
hardly be contended that delay of the other train in reach-
ing Louisville should have prevented this one from leaving
that city according to its schedule time. It is, however,
insisted for the Commonwealth that appellant is amenable
to the punishment prescribed by the statute because of its

failure to keep at Louisville an extra separate coach, equipped as required by the statute, for the use of its white and colored passengers, as it might have done, to guard against such emergencies as the one that occurred on February 19, 1903. It is true that a precaution might have been taken, but in view of the fact that no occasion had heretofore arisen for an extra separate coach of the character indicated, and of the further fact that there was an interval or margin of twelve and one-half hours between the time scheduled for the arrival of the train bringing the separate coach and the time of the of the train bringing the separate coach and the time of the departure of the other, appellant's contention that its employees charged with the duty of operating its trains could not, under the circumstances, have anticipated and guarded against the conditions that compelled the running of the train in question on February 19th without the separate coach, is not without force. At any rate, it was for the jury to say whether, notwithstanding the accident which delayed train No. 25, appellant, by the exercise of reasonable diligence, could have secured for train No. 22 a separate coach for white and colored passengers equipped as required by the statute. It is said by Bishop in his work on Statutory Crimes, sec. 132: "Again, a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act, because the common law requires such concurrence to constitute a crime. A case of overwhelming necessity, or of honest mistake of facts will thus be accepted out of a general statutory prohibition. . . ." It is true the statute supra declares "that any railroad company or companies that shall fail, refuse or neglect to comply with the provisions of sections 795 and 796 shall be guilty of a misdemeanor," etc. The

words "fail," "refuse," "neglect" are used interchangeably, and as meaning something more than an unavoidable or accidental violation of the statute. We are aware that it has been held by this court, and by other courts of last resort, that acts not done with compulsion or under necessity, if forbidden by statute, although not *malum in se,* are punishable as provided in the statute, notwithstanding they might have been done without willful or malicious intent. Wayman v. Commonwealth, 14 Bush, 466; Jellico Coal Co. . Commonwealth, 69 Ky., 373, 29 S. W., 26. In Commonwealth v. Bull, 13 Bush, 666, it is said: "When the Legislature has declared that a given act shall be deemed unlawful, the person voluntarily doing said act will be charged with a criminal intent." But the above rule applies to unlawful acts voluntarily (and, in that sense, intentionally) one, and never to such as are done under compulsion or necessity. The appellant, on the morning of the 19th of February, 1903, in sending out its train, seems to have acted from both necessity and compulsion. By unavoidable accident or casualty, the train from which train No. 22 was accustomed to get the separate coach in time for its departure from Louisville on the morning of each day was delayed beyond the hour for its departure from Louisville of that train, thereby leaving appellant to the choice of not sending out its train on the morning of the 19th of February, and not transporting its passengers or the mail in violation of law, or sending out the train without the separate coach for colored passengers, as the statute required. In Stephens' Digest of Criminal Law, art. 32, it is said: "An act which would otherwise be a crime may be excused if the person accused can show that it was done only in order to avoid the consequences which could not otherwise be avoided, and which, had they failed, would inflict upon him,

or upon others whom he was bound to protect, inevitable or unavoidable evil; that no more was done than was reasonably necessary for that purpose; and that the evil inflicted by it was not disproportionate to the evil avoided." Encyc. of Law and Procedure, vol. 12, p. 160. We think the appellant, upon the facts of this case, was entitled to the benefit of the rule above quoted, and that the trial judge erred in refusing to give to the jury the law as asked by appellant's counsel, though improperly expressed in the instructions offered. That is, the court should have instructed the jury that if they believed from the evidence that the operation of appellant's train February 19, 1903, without a separate coach or compartment car marked and provided with notices as set out in instruction No. 1, was caused by an unavoidable accident or casualty, which appellant by ordinary prudence could not reasonably have anticipated or guarded against, they should find the appellant not guilty.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.