STATE *v.* JAMES A. MERRILL.

November Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed August 9, 1911.

*Intoxicating Liquors—Unlawful Furnishing—Witnesses—Cross-Examination—Offers of Evidence—Requisites—Admissibility of Evidence.*

In a prosecution for unlawfully furnishing ale to a club, where a member and trustee of the club was called by the State and testified as to the character, purposes, membership, and government of the club, respondent's offer, on cross-examination, to show by the witness a transaction by which a person claiming to be a brewery agent had permission gratuitously to send some ale to the club in order to secure its patronage, and that the ale shown by the State to have been furnished the club was that so offered by the brewery, and was the only ale received by the club, was not within the scope of cross-examination, but an offer of new matter in respect of which the witness would have been respondent's.

To sustain an exception to the exclusion of offered evidence, the offer must be sufficient in form and substance to show that the tendered evidence is admissible.

In a prosecution for unlawfully furnishing ale to a club, an offer of evidence
    that the only ale received by the club was some gratuitously sent it
    by a person claiming to represent a brewery, was properly excluded,
    as it did not show that the ale was sent without respondent's agency.

INFORMATION for unlawfully furnishing intoxicating liquor.
Plea, not guilty. Trial by jury at the September Term, 1909,
Chittenden County, *Miles*, J., presiding. Verdict, guilty;
and judgment and sentence thereon. The respondent excepted.
The opinion states the case.

*R. E. Brown* and *V. A. Bullard* for the respondent.

*John G. Sargent, Attorney General*, and *Henry B. Shaw*,
*State's Attorney*, for the State.

POWERS, J. This case was argued and submitted at the
November Term, 1910. Some time thereafter, at the instance
of the State, the bill of exceptions was amended, and, at the re-
quest of the respondent, the case was held for re-argument on
the amended exceptions. Subsequently, counsel submitted
in writing their further suggestions and the same have been
considered.

The respondent was convicted of furnishing intoxicating
liquor contrary to law. He was the holder of a license of the
fourth class, (to sell liquors to retail licensees) granted by the
commissioners of the city of Burlington. The only offence
relied upon by the State or shown by the evidence was the
furnishing of two certain barrels of bottled Balantyne Ale
to the Elks Club, so-called, of the city of Montpelier, on August
31, 1909. The State's evidence tended to show that this ale was
shipped by the respondent from Burlington to the Elks Club
at Montpelier. That the Club was not a licensee, and that
Montpelier was at that time a no-license city. That the ale
was duly received and used by said Club, and that it was the
only Balantyne Ale had or used by the Club that year.

Two exceptions, only, are relied upon. One raises certain
constitutional questions which are admitted to be the same as
those involved in *State* v. *Burlington Drug Co.*, 84 Vt. 243, 78

Atl. 882,—a case argued at the same term and since decided
adversely to the respondent's contentions.  The other pertains
to the exclusion of certain testimony and arose in this way:
Among the witnesses introduced by the State was one Theriault,
a member and trustee of the Elks Club.  This witness was
first used by the State merely to show that the Club had no
license.  Later in the trial and during its opening, he was called
by the State and gave evidence in explanation of the character,
purposes, membership, organization and government of the
Club. He was cross-examined somewhat regarding these matters,
and when he was asked "What are the duties of the trustees
with reference to the purchase of articles for the association,
for instance, ale?"  Objection was made, and the Attorney
General said:  "Let it be understood that this is the defendant's
evidence, I suppose it is in order to let Mr. Theriault go on?"
To which counsel for the respondent replied, "Yes, that is
correct."  Whereupon the court allowed the question and the
examination proceeded.  The witness then explained somewhat
more fully the manner in which the affairs of the Club were
managed, and after covering some other unimportant matters
referred to a conversation which he had had with one Fessenden.
Being asked for whom Fessenden claimed to be acting, objection
was made, and respondent's counsel made the following offer:
"I offer to show by the witness that a man by the name of Fess-
enden, claiming to represent the Balantyne Brewing Company,
asked the privilege of sending, from the brewery in New York,
a couple of barrels of bottled Balantyne Ale, as a gratuity
to the Elks; that he explained the length of time it would take
the ale to come from New York to Montpelier, and that it would
be sent direct from the brewery; that it was given by the brewing
company for the purpose of inducing the order of Elks to send
orders direct to their brewery for their goods; and that he also
explained the length of time before which they wanted goods
they would need to order them, and either furnished or agreed
to furnish the witness with the proper address from which to
order these goods.  And we shall further offer to show that the
bottled ale that has been testified to by the witness Pine was
this ale that this man offered to furnish from the Balantyne
Brewing Company; that it was the only order of that kind that

the order of Elks had during that season." Thereupon the Attorney General remarked, "I would like to know if the gentleman expects to couple this with evidence that the ale was the ale sent from Burlington as the State's evidence tends to show?" To which respondent's counsel replied, "When we get to that part of the case, we will make our offers." The objection was sustained, the offer excluded, and the respondent excepted.

It is apparent that the evidence covered by this offer cannot be classed as cross-examination. The subject-matter thereof had not in any way been alluded to in the direct examination of the witness. It was new matter in the investigation of which the respondent's counsel made the witness his own,—and this is so without regard to his practical admission to that effect. The ruling of the court, therefore, is to be tested by the sufficiency of the offer, and the rule governing a cross-examination has no application. In order to afford a sufficient predicate for an available exception to its exclusion, an offer must be sufficient in form and substance to show the admissibility of the tendered evidence. Without this, there will be no error in its rejection. The evidence embraced within the offer under consideration was wholly valueless unless it tended to contradict the evidence showing a delivery of the ale by the respondent, or so to modify or explain the transaction as to eliminate its criminality. If, in fact, this ale was shipped to the Club from or by the Brewing Company evidence thereof was pertinent and important. If, on the other hand, it was actually shipped to the Club by the respondent, though in consummation of Fessenden's promise and by some arrangement with him, it was an illegal furnishing, since it was not and is not now claimed that Fessenden was a licensee. Standing alone the offer fell short of showing the admissibility of the evidence. It went far enough to show that the ale received by the Club was the ale promised by Fessenden, but not far enough to indicate that it was shipped or furnished otherwise than as the State's evidence tended to show.

*There is no error and the respondent takes nothing. Let execution be done.*