# Federal Land Bank of Springfield v. Wilfred L. Pollender and Joy W. Pollender, Stewart H. Werner and Margaret E. Werner, and Hazen C. Werner and Catherine S. Werner, Defendant-Intervenors

[399 A.2d 512]

No. 54-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed February 6, 1979

Motion for Reargument Denied February 21, 1979

*Christopher W. Fox* and *James C. Foley* of *Lynch & Foley,* Middlebury, for Plaintiff.

*Otterman and Allen,* Bradford, for Defendant-Intervenors.

*Julian R. Goodrich* of *Paterson, Gibson & Noble,* Montpelier, for Defendants.

**Larrow, J.** The plaintiff Federal Land Bank of Springfield appeals, by permission, from a judgment of foreclosure entered in its favor against the named defendants. At issue are the provisions of the judgment which subordinate the lien of plaintiff's mortgage to rights of the defendants Stewart H. and Margaret E. Werner (the younger Werners) and of the defendant-intervenors Hazen C. and Catherine S. Werner (the elder Werners), parents of Stewart. Defendants Wilfred L. and Joy W. Pollender, the makers of the note and mortgage foreclosed upon, have not appealed. Mrs. Pollender is the daughter of the elder Werners, and sister of Stewart Werner.

The property involved is a 340 acre farm in Bradford, Vermont, acquired by the elder Werners in 1932 and 1942. Hazen Werner, a Methodist Bishop, and his wife are elderly, and have occupied the Bradford property as their principal residence since 1932. They were, however, in Vergennes for some period prior to March 1, 1973. Vergennes is the Pollender residence. Mr. Pollender is a real estate broker, without farm experience.

In early 1973 the elder Werners and the Pollenders discussed a program of "estate planning" whereby the Bradford real estate was to be transferred to son Stewart and daughter Joy, with possession reserved for a period in the elder Werners and money payments made to them over an extended period. The property was presumably to pass eventually to grandchildren. Mr. Pollender engaged his attorney to prepare an agreement, eventually executed, which is the nub of the instant controversy. Executed April 24, 1973, it was never recorded.

Under the agreement the elder Werners promised to convey the Bradford property to the Pollenders by a warranty deed. It also provided that the elder Werners were to possess, for a ten year interval, the right to manage the property, occupy it and control its occupancy by others. During that period taxes and maintenance were to remain their responsibility. Proposed major improvements were to be subject to the approval of the Pollenders and the younger Werners.

The agreement obligated the Pollenders to make ten annual payments of $6,000 to the elder Werners beginning May 1, 1973. Upon assumption by the younger Werners of half these payments, the Pollenders were to convey to them "one-half of said real estate free and clear of encumbrance and with the understanding that Stewart and Margaret Werner shall convey a portion of their share of said real estate to their children." The Pollenders also promised to convey a portion of their share to their children.

On the same day, the elder Werners executed and delivered to the Pollenders a warranty deed in the usual form to the Bradford property, free from every encumbrance. The deed was recorded in Bradford two days later, on April 26, 1973.

During March and April, 1973, Mr. Pollender had been negotiating with plaintiff for a $100,000 loan on the property, secured by first mortgage. Various documents were prepared by them in connection with this application. A credit report dated March 28, 1973, described the sale as being with the agreement that $6,000 be paid the elder Werners annually "with no other money considerations." They were noted as Mr. Pollender's "in-laws." An appraiser's report dated February 21, 1973, described a "wish to maintain property in family" and noted that "farm was acquired by family deal for care of wife's parents." The loan officer's report referred to a "Family deal consideration with $6,000 paid annually to member's in-laws."

Despite this file information, all secured before the loan was actually made, the plaintiff never made any inquiry or attempt to determine the facts, circumstances or obligations surrounding the "family deal" or its effect on the property in question. The loan was closed on April 26, 1973, with a note and mortgage for $100,000. The mortgage and deed were recorded together. On December 13, 1973, the loan, then delinquent, was refinanced by a new note under the future advances clause of the mortgage.

This foreclosure is for the sums due on that second note, also delinquent. No payments have been made since 1975.

In August, 1973, by deed not recorded until August, 1975, the Pollenders conveyed an undivided one-half interest in the Bradford property to the younger Werners, subject to "one prior mortgage to the Federal Land Bank of Springfield." None of the Werners knew of the note and mortgage until some time after the April 26 closing; they received no part of the proceeds, which were paid over to the Pollenders. The elder Werners retained possession of the premises up to the present, kept it furnished and used it from time to time. They control the only keys.

None of the parties have alleged that the elder Werners were duped or defrauded in any way; they have not sought to avoid or to reform the original agreement here in issue. Rather, for reasons not apparent from the record, the Werners not only reaffirm the agreement, but insist that it has priority over the lien of plaintiff's mortgage, and that the subsequent deed to the younger Werners, executed in compliance with it, shares that priority. The trial court agreed, foreclosing only the defendants Pollender, and adjudging that any title acquired by the plaintiff would be subject to the rights of all the Werners, and of the grandchildren, under the agreement.

In reaching its conclusion, the trial court appears to have relied in part upon continued possession by the elder Werners as charging the plaintiff with a duty of inquiry, and in part upon the "signs and signals" to be found in the notations in its own files, made either before or contemporaneously with the original loan transaction. The reliance upon continued possession we do not view as justified.

We are aware that some of our cases indicate, without much analysis or discussion, that continued possession after conveyance is a sign or signal to a later grantee or lienholder that there may well be extant rights in the possessor, so as to give rise to a duty of inquiry. On their facts, those cases are authority for the proposition they express. But, for the most part, the facts which these cases involve give forth a much stronger signal than the two day continued possession, by a family member, which we deal with here. In *Wright* v. *Bates*, 13 Vt. 341 (1841), and in *Allen* v. *Gates*, 73 Vt. 222, 50 A. 1092 (1900), the continued possession was a matter of years, as it was in *Perkins* v. *West*, 55 Vt. 265 (1882). And, in *Tomasi* v. *Kelley*, 100 Vt. 318, 322, 137 A. 196, 198

(1927), where the implied notice involved was continued possession by tenants of the former owner, the court emphasized possession "for any considerable time" as the proper evidence to establish such notice. We can establish no set rule for the time within which continued possession becomes an implied notice of claimed rights. The "prudent man" rule referred to in the cases must govern. We hold only that the failure to remove furniture within two days of a conveyance, especially a family conveyance, unaccompanied by actual personal habitation of the premises, cannot be such implied notice, standing alone.

■■ It can, however, be of some significance in connection with the other "signs and signals" which were present. The fact that the possession continued until the second note was taken under the future advances clause of plaintiff's mortgage does not affect the result. Under our previous case law, now embodied in 8 V.S.A. § 1207, advancements under such a clause have protected priority against intervening encumbrances in the absence of a written notice from the second lienholder, to the first, of the incidence of the second lien. But the other elements of the original transaction, which were known to the plaintiff at the time of the first loan and evidenced by its own files, were sufficient to justify the conclusion of the trial court that the plaintiff was put upon inquiry. It knew the family nature of the whole transaction; it knew the market value greatly exceeded the expressed consideration. It knew of a "deal" involving care of the parents and keeping the property in the family. It had a report as to the $6,000 annual payment "with no other money considerations." Although this phrase implies other considerations not of a monetary nature, it made not even the slightest effort to ascertain what those other considerations might have been. Taken cumulatively, they constitute the "signs and signals" which should have put a prudent man upon inquiry. *Farmers Exchange* v. *Walter M. Lowney Co.*, 95 Vt. 445, 451–52, 115 A. 507, 509–10 (1921).

> It is a rule of general application that one who has knowledge of facts sufficient to induce a prudent man to inquire in respect to other facts germane to the matter in hand, will be charged with knowledge of such other and further facts as he might have learned by reasonable diligence in prosecuting his inquiry in the right direction.

*McGann* v. *Capital Savings Bank & Trust Co.*, 117 Vt. 179, 183, 89 A.2d 123, 126 (1952). A simple inquiry to the elder Werners

here would have revealed the original agreement and its contents. Failure to make that inquiry charges the plaintiff with notice of its contents.

Such a holding is not, however, dispositive of all issues raised by this appeal. It gives priority to the rights of the elder Werners under the original agreement. But those rights are, we must point out, limited in nature because of the terms of the agreement, not here under attack. They encompass a ten year right of occupancy, while responsible for taxes and maintenance, the only other rental being covered by the conveyance of the property itself, a form of rental prepayment. They do not, we must point out, include any form of security for the annual payments contracted for, because, wisely or not, no such security was contemplated or provided for by the agreement. Essentially, in spite of the foreclosure, the elder Werners are entitled to retain possession for the specified time, upon the specified terms, without payments by them except as provided in the agreement. In substance, they have a lease back, not merged in their subsequent deed because it neither contradicts nor varies the terms of the deed. *Morris* v. *Whitcher*, 20 N.Y. 41 (1859). And see *Re Estate of Perkins*, 65 Vt. 313, 26 A. 637 (1893).

■ This same general doctrine, however, does bar the younger Werners from asserting that their contractual rights have any priority over those of the plaintiff bank. Whatever those rights were under the agreement, they were made expressly subject to the plaintiff's mortgage lien by the recited clause contained in the deed from the Pollenders to them. Rightly or wrongly, this deed, which they accepted, was "subject to one prior mortgage to the Federal Land Bank of Springfield." Acceptance of this deed bars any claim of continuing priority for their rights. *Congregational Society in Hubbardton* v. *Flagg*, 72 Vt. 248, 47 A. 782 (1900); *Davis* v. *Hulett*, 58 Vt. 90, 4 A. 139 (1886); *State Savings and Loan Association* v. *Kauaian Development Co.*, 50 Haw. 540, 445 P.2d 109 (1968).

■ Plaintiff further assigns as error the refusal of the trial court to include reasonable attorney fees in its judgment order, as provided for in the mortgage instrument. The trial court based its refusal upon absence of proof as to amount. In our view, the provisions of V.R.C.P. 80.1(e) contemplate the allowance of a reasonable attorney fee not exceeding two percent of the principal, interest and costs found due upon accounting, to be allowed

without hearing, in the absence of objection, and unless a higher amount is claimed. Such two percent should have been included in the judgment order below.

Since the redemption period set below has already expired, a new judgment order is required in any event, and the cause will be remanded for that purpose. The new judgment order should reflect the views herein expressed, affirming the priority status of the claims of Hazen G. and Catherine S. Werner and the subordinate status of the claims of Stewart H. Werner and Margaret E. Werner. Because of that subordinate status, the judgment order should accord Stewart H. and Margaret E. Werner a right of redemption. Attorney fees not exceeding two percent of the sums found due should be included in the judgment.

*Judgment vacated, and cause remanded for new judgment order in accordance with the views herein expressed. Costs in this Court to the plaintiff against defendants Stewart H. and Margaret E. Werner and to defendant-intervenors Hazen G. and Catherine S. Werner against the plaintiff; costs below to the plaintiff against defendants Pollender and Stewart H. and Margaret E. Werner, and to defendant-intervenors Hazen G. and Catherine S. Werner against the plaintiff.*

**Billings, J.,** dissenting in part. I am unable to agree with the majority insofar as it concludes that the elder Werners have property rights superior to the lien of plaintiff's mortgage. It is undisputed that plaintiff had no actual notice of any property rights in the elder Werners. It is also clear, as the majority itself points out, that the elder Werners' two-day continued possession after title was transferred to the Pollenders could not have constituted implied notice to put the plaintiff on inquiry. In my view, the indefinite and vague notations in plaintiff's files as to the family nature of the transaction and the consideration for the transfer of the property from the elder Werners to the Pollenders were not sufficient "signs and signals" to put a prudent man upon inquiry under the doctrine of *McCann* v. *Capital Savings Bank & Trust Co.*, 117 Vt. 179, 183, 89 A.2d 123, 126 (1952) and *Farmers Exchange* v. *Walter M. Lowney Co.*, 95 Vt. 445, 450, 115 A. 507, 509 (1921). Indefinite or vague reports are not sufficient implied notice to put a mortgagee upon inquiry. 6 R. Powell, The Law of Real Property § 916 (1977). On the facts of this case, I would hold as a matter of law that the plaintiff was not chargeable with notice.

Even assuming that the information here was sufficient to put the plaintiff upon inquiry initially, the giving of a warranty deed to the mortgagors by the elder Werners would have allayed any reasonable suspicion on plaintiff's part, terminating the duty to inquire. If one has facts sufficient, taken alone, to put him on inquiry, he need not inquire where circumstances render these facts consistent with the mortgagor's title. *Gifford* v. *Rutland Savings Bank*, 63 Vt. 108, 114, 21 A. 340, 341 (1890).

It is my opinion that the majority has stretched the rigging to arrive at a result which is not warranted on the record. I would hold the plaintiff's lien superior to the rights claimed by the elder Werners.