## State of Vermont v. John Warshow, et al.

[410 A.2d 1000]

Nos. 220, 231, 233, 251, 252 and 253-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed December 21, 1979

Motion for Reargument Denied January 15, 1980

*John A. Rocray,* Windham County State's Attorney, and *Linda Levitt,* Deputy State's Attorney, Brattleboro, for Plaintiff.

*John Warshow, pro se,* Plainfield, Defendant.

Barney, C.J. The defendants were part of a group of demonstrators that travelled to Vernon, Vermont, to protest at the main gate of a nuclear power plant known as Vermont Yankee. The plant had been shut down for repairs and refueling, and these protestors had joined a rally designed to prevent workers from gaining access to the plant and placing it on-line.

They were requested to leave the private premises of the power plant by representatives of Vermont Yankee and officers of the law. The defendants were among those who refused, and they were arrested and charged with unlawful trespass.

The issue with which this appeal of their convictions is concerned relates to a doctrine referred to as the defense of necessity. At trial the defendants sought to present evidence relating to the hazards of nuclear power plant operation which, they argued, would establish that defense. After hearing the defendants' offer of proof the trial court excluded the proffered evidence and refused to grant compulsory process for the witnesses required to present the defense. The jury instruction requested on the issue of necessity

was also refused, and properly preserved for appellate review.

In ruling below, the trial court determined that the defense was not available. It is on this basis that we must test the issue.

■ The defense of necessity is one that partakes of the classic defense of "confession and avoidance." It admits the criminal act, but claims justification. It has a counterpart in civil litigation, recognized in Vermont in the case of *Ploof* v. *Putnam,* 81 Vt. 471, 71 A. 188 (1908).

The doctrine is one of specific application insofar as it is a defense to criminal behavior. This is clear because if the qualifications for the defense of necessity are not closely delineated, the definition of criminal activity becomes uncertain and even whimsical. The difficulty arises when words of general and broad qualification are used to describe the special scope of this defense.

In the various definitions and examples recited as incorporating the concept of necessity, certain fundamental requirements stand out:

(1) there must be a situation of emergency arising without fault on the part of the actor concerned;

(2) this emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting;

(3) this emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and

(4) the injury impending from the emergency must be of sufficient seriousness to outmeasure the criminal wrong.

See W. LaFave & A. Scott, Handbook on Criminal Law § 50 (1972).

■ It is the defendants' position that they made a sufficient offer of proof to establish the elements of the necessity defense to raise a jury question. The trial court rejected this contention on the ground, among others, that the offer did not sufficiently demonstrate the existence of an emergency or imminent danger.

This ruling was sound, considering the offer. The defendants wished to subpoena witnesses to testify to the dangers of nuclear accidents and the effect of low-level radiation. It was conceded that there had been no serious accident at Vermont Yankee, but defendants contended that the consequences could be so serious that the mere possibility should suffice. This is not the law.

There is no doubt that the defendants wished to call attention to the dangers of low-level radiation, nuclear waste, and nuclear accident. But low-level radiation and nuclear waste are not the types of imminent danger classified as an emergency sufficient to justify criminal activity. To be imminent, a danger must be, or must reasonably appear to be, threatening to occur immediately, near at hand, and impending. *State* v. *Huett*, 340 Mo. 934, 950, 104 S.W.2d 252, 262 (1937). We do not understand the defendants to have taken the position in their offer of proof that the hazards of low-level radiation and nuclear waste buildup are immediate in nature. On the contrary, they cite long-range risks and dangers that do not presently threaten health and safety. Where the hazards are long term, the danger is not imminent, because the defendants have time to exercise options other than breaking the law. W. LaFave & A. Scott, *supra*, at 388.

Nor does the specter of nuclear accident as presented by these defendants fulfill the imminent and compelling harm element of the defense. The offer does not take the position that they acted to prevent an impending accident. Rather, they claimed that they acted to foreclose the "chance" or "possibility" of accident. This defense cannot lightly be allowed to justify acts taken to foreclose speculative and uncertain dangers. Its application must be limited to acts directed to the prevention of harm that is reasonably certain to occur. See *State* v. *Dorsey*, 118 N.H. 844, 846, 395 A.2d 855, 857 (1978) (the common law defense did not deal with nonimminent or debatable harms). Therefore the offer fails to satisfy the imminent danger element. The facts offered would not have established the defense.

These acts may be a method of making public statements about nuclear power and its dangers, but they are not a legal

basis for invoking the defense of necessity. Nor can the defendants' sincerity of purpose excuse the criminal nature of their acts.

Since the offered evidence was insufficient to support any possible defense of necessity, we need not reach any of the other issues raised by this appeal, including the effect of declared legislative policy. See *State* v. *Dorsey, supra.*

*Judgment affirmed.*

Hill, J., concurring. While I agree with the result reached by the majority, I am unable to agree with their reasoning. As I see it, the sole issue raised by this appeal is whether the trial court erred in not allowing the defendants to present the defense of necessity.

For the purposes of this concurrence I briefly restate the relevant factual background. The convictions under review arose out of a peaceful anti-nuclear demonstration conducted on the property of Vermont Yankee Nuclear Power Station in Vernon on October 8, 1977. Although the power station had been shut down for six to eight weeks prior to the demonstration, it was about to be refueled and recommence operation. Based upon their belief that nuclear power presented real and substantial dangers, defendants blocked the entrance to the power station to prevent its further operation.

At trial defendants sought to raise the affirmative defense of necessity, arguing that they were faced with a choice of evils—either violate the literal terms of the law or comply with the law and allow the commission of a more egregious wrong, *i.e.*, the proliferation of nuclear power—and that they chose the course which would result in the least harm to the public, even though it meant violating the criminal law. The trial court refused to allow the defendants to present the defense, stating that it was not available "in Vermont at this time."

Necessity has long been recognized at common law as a justification for the commission of a crime. See, e.g., *United States* v. *Ashton,* 24 F. Cas. 873 (C.C.D. Mass. 1834) (No. 14,470); *The William Gray,* 29 F. Cas. 1300 (C.C.D.N.Y. 1810) (No. 17,694); *Chesapeake & Ohio R.R.* v. *Common-*

*wealth,* 119 Ky. 519, 84 S.W. 566 (1905); *State* v. *Jackson,* 71 N.H. 552, 53 A. 1021 (1902). And, although the defense has not been explicitly recognized in Vermont in the context of a criminal prosecution, it has been accepted in the law of torts, *Ploof* v. *Putnam,* 81 Vt. 471, 71 A. 188 (1908). I see no reason why the defense should not be recognized in the criminal law context. "The principle involved is one of general validity; . . . and there is even greater need for its acceptance in the law of crime." Model Penal Code § 3.02, Comment 3 at 7 (Tent. Draft No. 8, 1958). Although this holding is implicit in the majority opinion, I would make it explicit.

The defense of necessity proceeds from the appreciation that, as a matter of public policy, there are circumstances where the value protected by the law is eclipsed by a superseding value, and that it would be inappropriate and unjust to apply the usual criminal rule. See generally W. LaFave & A. Scott, Handbook on Criminal Law § 50 (1972). The balancing of competing values cannot, of course, be committed to the private judgment of the actor, but must, in most cases, be determined at trial with due regard being given for the crime charged and the higher value sought to be achieved.

Determination of the issue of competing values and, therefore, the availability of the defense of necessity is precluded, however, when there has been a deliberate legislative choice as to the values at issue. See *United States* v. *Kroncke,* 459 F.2d 697, 701 (8th Cir. 1972) ; *State* v. *Dorsey,* 118 N.H. 844, 846, 395 A.2d 855, 857 (1978) ; Model Penal Code, *supra,* § 3.02, Comment 1(b) at 6; W. LaFave & A. Scott, *supra,* at 382. The common law defense of necessity deals with imminent dangers from obvious and generally recognized harms. It does not deal with nonimminent or debatable harms, nor does it deal with activities that the legislative branch has expressly sanctioned and found not to be harms. *State* v. *Dorsey, supra,* 118 N.H. at 846, 395 A.2d at 857 (citing G. Williams, Criminal Law: The General Part § 232, at 729 (2d ed. 1961)).

Both the State of Vermont and the Federal government have given their imprimatur to the development and normal operation of nuclear energy and have established mechanisms for the regulation of nuclear power. See, e.g., 18 V.S.A.

§§ 1652–1658, 1700–1702; 3 V.S.A. §§ 3116a–3117; 10 V.S.A. §§ 6501–6504; 42 U.S.C. §§ 2011–2296, 5801–5891. Implicit within these statutory enactments is the policy choice that the benefits of nuclear energy outweigh its dangers.

If we were to allow defendants to present the necessity defense in this case we would, in effect, be allowing a jury to redetermine questions of policy already decided by the legislative branches of the federal and state governments. This is not how our system of government was meant to operate.

I express no opinion as to the relative merits or demerits of nuclear energy, nor do I question the sincerity of the defendants' beliefs. All that I would hold is that this Court is not the proper forum to grant defendants the relief they seek. Defendants still have the right to try to induce those forums that have made the policy choices at issue today to reconsider their decisions. But until that time I feel constrained to follow the law as it is, not as some would like it to be.

In my opinion the majority puts the cart before the horse. It measures the offer made against the requisite elements of the defense of necessity and concludes that the defendants failed to show a likelihood of imminent danger; yet it reserves judgment on the legislative policy exception to the defense. It is illogical to consider whether the necessary elements of a defense have been shown before determining whether the defense is even available in the particular situation.

The dissent, on the other hand, assumes that defendants' offer was sufficient to show not only imminent danger but also a failure of the regulatory scheme. I cannot agree with this assumption because the offer failed to show a danger not contemplated by the legislative scheme. The legislative framework was set up to deal with the very situation defendants offered to prove "might" happen. But because neither the state legislature nor Congress acted to shut down the power plant based on speculative possibilities does not, in my opinion, give rise to the questionable inference that there was an emergency which the regulatory scheme failed to avert. The dissent in reaching the conclusion that defendants' offer was sufficient has, in my opinion, "stretched the rigging to arrive at a result which is not warranted on the record."

*Federal Land Bank* v. *Pollender,* 137 Vt. 42, 49, 399 A.2d 512, 517 (1979) (Billings, J., dissenting).

Since defendants' defense of necessity was foreclosed by a deliberate legislative policy choice, there was no error on the trial court's part in not allowing the defense to be presented.

**Billings, J.,** dissenting. This is an appeal from convictions for unlawful trespass under 13 V.S.A. § 3705. The sole issue before the Court is whether the trial court erred in excluding evidence on the defense of necessity at trial on the offer of proof made by the defendants at the preliminary hearing and at the trial.

The defendants, appearing pro se, made an offer of proof detailing the elements of the defense of necessity. The trial judge did not rule on the sufficiency of the offer, but excluded the offered evidence, stating that "the Court does not view it as a justification or a defense as the act as alleged [*sic*] in Vermont at this time."

The common law has recognized that an act done through the compulsion of an emergency situation where the peril of imminent danger exists is not a crime. *Rhode Island Recreation Center, Inc.* v. *Aetna Casualty & Surety Co.,* 177 F.2d 603 (1st Cir. 1949) ; *United States* v. *Ashton,* 24 F. Cas. 873 (C.C.D. Mass. 1834) (No. 14,470) ; *Nelson* v. *State,* 597 P.2d 977 (Alaska 1979). Vermont has long recognized and accepted the necessity defense in civil trespass actions. *Ploof* v. *Putnam,* 81 Vt. 471, 71 A. 188 (1908). That this Court should recognize the existence of this defense is equally, if not more, compelling in the case of criminal trespass than in a civil law action.

Here the trial court prevented the introduction of any evidence on the issue of necessity in spite of the offer of proof. The test is whether the offer of proof was sufficient in form and substance to show that the tendered evidence was relevant and admissible. *State* v. *Merrill,* 85 Vt. 35, 38, 80 A. 819, 821 (1911), and material, *State* v. *Fernie,* 129 Vt. 605, 606, 285 A.2d 726, 727 (1971). The offer must be only specific and concrete enough to make apparent to the trial court the existence of facts, which, if proved, would make the evidence rele-

vant to an issue in the case and otherwise admissible. *Cushman* v. *Outwater*, 121 Vt. 426, 432, 159 A.2d 89, 93 (1960); *State* v. *Lucia*, 104 Vt. 53, 58, 157 A. 61, 63 (1931).

The majority states that the danger of low-level radiation and nuclear waste, which the defendants offered to prove, are "not the types of imminent danger classified as an emergency sufficient to justify criminal activity." Furthermore, the majority dismisses those portions of the proof dealing with the threat of a nuclear accident by characterizing them as mere "speculative and uncertain dangers." In doing so the majority has decided to so read the evidence as to give credibility only to that evidence offered on the effects of low-level radiation. This approach is clearly inconsistent with the case of *State* v. *Fernie, supra,* 129 Vt. at 606, 285 A.2d at 727, in which then Justice Barney held that it is reversible prejudicial error for the trial court to exclude a whole line of material evidence tending to support a defense even though "[d]eficiencies in the admissibility of such evidence might . . . have later appeared." It is not for this Court to weigh the credibility of the evidence in this manner where there is evidence offered on the elements of the defense. While this case might stand in a different posture if, at the close of the defendants' evidence, they had failed to introduce evidence, as offered, on each and every element of the defense sufficient to make out a prima facie case, that situation is not before us. Furthermore, it is not for the trial judge to rule on the ultimate credibility and weight of the evidence. Where there is evidence offered which supports the elements of the defense, the questions of reasonableness and credibility are for the jury to decide. See *State* v. *Wilson,* 113 Vt. 524, 527, 37 A.2d 400, 401 (1944).

The defendants offered evidence on all the requisite elements of the defense of necessity. They stated as follows:

> [They had] a feeling that there was a situation of an emergency or imminent danger that would have occurred with the start up of the reactor on October 8th the time of [their] alleged crime . . . the chance . . . of the nuclear power plant having a serious accident which would cause . . . great untold damage to property and lives and health for many generations.

The defendants also stated that "there was reasonable belief that it would have been an emergency had they started that reactor up . . . there was a very good chance of an accident there for which there is no insurance coverage or very little." Specifically, the defendants offered to show by expert testimony that there were defects in the cooling system and other aspects of the power plant which they believed could and would result in a meltdown within seven seconds of failure on the start up of the plant. In addition, the defendants went to great lengths to base their defense on the imminent danger that would result from the hazardous radiation emitted from the plant and its wastes when the plant resumed operations.

While the offer made by the defendants was laced with statements about the dangers they saw in nuclear power generally, it is clear that they offered to show that the Vermont Yankee facility at which they were arrested was an imminent danger to the community on the day of the arrests; that, if it commenced operation, there was a danger of meltdown and severe radiation damage to persons and property. In support of this contention, the defendants stated that they would call experts familiar with the Vermont Yankee facility and the dangerous manner of its construction, as well as other experts who would testify on the effects of meltdown and radiation leakage, on the results of governmental testing, and on the regulation of the Vermont Yankee facility. These witnesses were highly qualified to testify about the dangers at the Vermont Yankee facility based either on personal knowledge or on conditions the defendants offered to show existed at the time of the trespass.

Furthermore, the defendants offered to show that, in light of the imminent danger of an accident, they had exhausted all alternative means of preventing the start up of the plant and the immediate catastrophe it would bring. Under the circumstances of imminent danger arising from the start up of the plant, coupled with the resistance of Vermont Yankee and government officials, which the defendants offered to prove, nothing short of preventing the workers access to start up the plant would have averted the accident that the defendants expected.

Through this offer, it cannot be said, without prejudgment, that the defendants failed to set forth specific and concrete evidence, which, if proven, would establish the existence of an imminent danger of serious proportions through no fault of the defendants which could not be averted without the trespass. See *United States* v. *Ashton, supra,* 24 F. Cas. at 874. Whether the defendants' expectations and opportunities were reasonable under the circumstances of this case is not for the trial court to decide without hearing the evidence. See *Nelson* v. *State, supra,* 597 P.2d at 979–80. From a review of the record, I am of the opinion that the offer here measured up to the standard required and that the trial court struck too soon in excluding the offered evidence.

I would also dissent from the concurring opinion in so far as it attempts to hide behind inferences that the legislature precluded the courts from hearing the defense of necessity in the instant case on the authority of *State* v. *Dorsey,* 118 N.H. 844, 395 A.2d 855 (1978). Even assuming that such inferences can be drawn from the regulatory schemes cited, they have no bearing on this case. We are asked to infer under the facts, which the defendants offered to prove (that they were acting to avert an imminent nuclear disaster), that the legislative branch of government would not permit the courts of this state to entertain the defense of necessity because it had legislatively determined nuclear power to be safe. Were the defense raised without any offer to show an imminent danger of serious accident, it might fail both because defendants did not offer evidence on imminent danger and on the basis of legislative preclusion. But, where, as here, the defendants offer to prove an emergency which the regulatory scheme failed to avert, the inference of preclusion is unwarranted. The defendants are entitled to show that although there is a comprehensive regulatory scheme it had failed to such an extent as to raise for them the choice between criminal trespass and the nuclear disaster which the regulatory scheme was created to prevent.

Moreover, statutory enactments in derogation of the common law are strictly construed. This Court has heretofore been of the opinion that with regard to the language of statutes, the "[r]ules of common law are not to be changed by doubtful implication." *State* v. *Levine,* 117 Vt.

320, 322, 91 A.2d 678, 679 (1952). The concurring opinion fails to indicate any basis for its implication, and I can find none that meets this test. In fact, the statutes to which the concurring opinion directs our attention make it the duty of the Nuclear Advisory Panel "[t]o develop awareness in the state . . . of the potential liabilities . . . of a fixed nuclear facility in this state," 18 V.S.A. § 1701(a)(5), and generally secure to the people, as individuals and through their local and state representatives, the right to evaluate the dangers of depositing, storing, or reprocessing high-level radioactive waste materials, 10 V.S.A. §§ 6501–6504. Moreover, the legislature has seen fit to recognize the right of individuals to sue for damages resulting from ionizing radiation. 12 V.S.A. § 518. It cannot be said categorically that "[i]mplicit within these statutory enactments is the policy choice that the benefits of nuclear energy outweigh its dangers," as the concurring opinion states.

I am of the opinion that the defendants are entitled to present evidence on the defense of necessity as it exists at common law. To deny them this opportunity is to deny them a fair trial merely because they express unpopular political views. I would hold that they are entitled to present evidence on this defense even though they may well fail to establish a sufficient case to send the issue to the jury for deliberation, because I find the offer of proof sufficient for this purpose under the law of Vermont.