## Louisville & Nashville Railroad Company v. Commonwealth.

(Decided May 1, 1917.)

### Appeal from Estill Circuit Court.

1. Constitutional Law—Prosecution by Information.—Section 12 of the Constitution, providing that no person shall be proceeded against by information for an indictable offense, applies to offenses that were indictable at common law. Misdemeanor offenses created by statute may be prosecuted by information.

2. Criminal Law—Prosecution of Offenses by Information.—The legislature may create offenses punishable by fine and imprisonment and provide for their prosecution by information in place of indictment, although the penalty may be more than that authorized by section 1141 of the statutes.

3. Criminal Law—Classification in Creation of Offenses.—The legislature has large authority and discretion in the creation of statutory offenses and in the division of offenses into classes applica-

ble to certain persons and certain kinds of business, and may provide different penalties for the different classes of offenses so created, as well as different modes of prosecuting them.

4.  Criminal Law—Excessive Penalties.—Defendant cannot complain of a statute that does not affect him. The defendant will not be heard to object that a statute under which he is being prosecuted imposes excessive penalties when he is not affected by this alleged fault in the statutes.

5.  Railroads—Classification of Offenses That May Be Committed By. —The legislature in the enactment of penal statutes may deal with railroads as a class, defining the offenses railroads may be guilty of and fixing the penalty therefor.

6.  Railroads—Operation of Passenger Trains—Construction of Section 772a of the Kentucky Statutes.—Under section 772a of the Kentucky Statutes a railroad company must operate daily except Sundays, one passenger train each way over a line of road exceeding five miles in length, unless it has a lawful excuse for not so doing.

7.  Railroads—Operation of Passenger Trains—Construction of Section 772a of the Kentucky Statutes—Excuse for Failure to Operate.—A railroad company wilfully violating the provisions of this statute, without a lawful and sufficient excuse, may be subjected to its penalties. A railroad company may excuse its failure to operate its passenger trains daily when the roadbed is, without fault or negligence on the part of the company, in such condition as that it would not be safe to operate passenger trains over it. But it will have no excuse if the condition of the road has been brought about by the negligence of the company, or is due to any cause manifesting a purpose on its part to produce the condition that might make it unsafe to operate trains.

8.  Railroads—Operation of Passenger Trains—Construction of Section 772a—Excuse for Failure to Operate.—In a prosecution against a railroad company for failing to operate passenger trains as required by the statute, it is competent for the railroad company to show that, without its fault or negligence, the roadbed was in such condition as that passenger trains could not be operated over it with safety.

WALLACE & HARRISS, ROBERT F. FRIEND and BENJAMIN D. WARFIELD for appellant.

M. M. LOGAN Attorney General; OVERTON S. HOGAN, Assistant Attorney General, and KELLY KASH, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Section 772a of the Kentucky Statutes provides in subsection one: "That all corporations, companies, persons or associations owning and operating a railroad

line in this Commonwealth or any branch of any railroad in this Commonwealth, the length of which exceeds five miles, shall be required and they are hereby directed, to run at least one passenger train each way on every day of the year, Sundays excepted, over said line: *Provided, however,* that the operation of a train known as a mixed train on lines carrying passengers and freight for hire, on which both passengers and freight are carried, if operated in accordance with the provisions of this act, shall be deemed a compliance therewith. *Provided, further,* that the provisions of this act shall not apply to mere coal switches or any switch or branch, which is chartered and used by any corporation, company or person merely for the purpose of carrying freight or coals to their main line or track."

And in subsection two that a willful violation of the provisions of the act shall subject the guilty corporation to a forfeiture of its charter and to a fine of not less than three hundred dollars for each offense. There is a further provision that the failure to run a train on any day during the year except Sundays shall be a separate and distinct offense.

Subsection three provides that the penalties denounced by the statute may be recovered by indictment, or by information, or by ordinary suit for penalties.

Proceeding under this statute the Commonwealth's Attorney for the district including Estill county, filed in the Estill circuit court an information against the railroad company charging it with a violation of this statute by wilfully and knowingly failing and refusing on January 5, 1916 to run and operate at least one passenger train or mixed train carrying freight and passengers for hire on a line of railroad owned and operated by it from Irvine to Winchester over five miles in length. The information also negatived the exceptions mentioned in the first subsection of the statute.

On a trial of the case before a jury there was a judgment against the railroad company for three hundred dollars, and it prosecutes this appeal, relying upon several grounds for reversal. It is first urged that the prosecution should have been by indictment and not by information and therefore the trial court committed error in overruling the motion to quash the information.

It is provided in section 12 of the constitution that "No person, for an indictable offense, shall be pro-

ceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger, or by leave of court for oppression or misdemeanor in office." Construing this section literally, it would appear that a prosecution for an indictable offense such as, for example, a violation of section 772a of the Kentucky Statutes, could not be commenced by an information unless the case came within one of the exceptions mentioned in the section. But we correctly held in Ford v. Moss, 124 Ky. 288, and Commonwealth v. Carter, 152 Ky. 463, that an indictment is not indispensable in the prosecution of an offense which was not an indictable offense at common law; so that the legislature has the power and discretion to provide that any misdemeanor created by statute may be prosecuted by information.

It is said, however, that as section 1141 of the Kentucky Statutes provides, in part, that "In misdemeanor cases, where the highest penalty that may be imposed is a fine of one hundred dollars and imprisonment for fifty days, the offender may be prosecuted by warrant, as provided in the Criminal Code, or by information filed by the Commonwealth's Attorney or county attorney in the circuit court, or before the county judge, or a justice of the peace, or police or city judge," this statute confines the misdemeanor cases that may be prosecuted by information to that class in which the highest penalty that may be imposed is a fine of one hundred dollars and imprisonment for fifty days, and as the lowest penalty fixed in section 772a is three hundred dollars, this section is in conflict with section 1141 and must yield to the general provisions of that section.

The enactment, however, of section 1141 did not preclude the legislature from creating by other legislation classes of offenses and prescribing the penalties for such offenses and the manner in which violators of these statutes might be prosecuted. The legislature has large authority and discretion in the creation of statutory offenses and in the division of offenses into classes applicable to certain persons and certain kinds of business, and it may provide different penalties for the different offenses so created as well as different modes of prosecuting these offenses when the offenses created are not embraced by section 12 of the constitution.

Accordingly it is very plain that the legislature has the power in the enactment of penal statutes to deal with railroads as a class, and numerous illustrations of the exercise of this power are to be found in the statutes defining offenses of which railroads may be guilty and fixing the punishment therefor. So that we find no merit in this objection.

Nor is the argument, that under this statute excessive and confiscatory penalties might be imposed, available in this case, because the company was subjected to only a moderate fine in the judgment appealed from. It will be time enough to determine how many fines of not less than three hundred dollars in the course of a year a railroad might constitutionally be adjudged to pay under this statute when we have a case presenting this question. The defendant in a criminal prosecution will not be heard to complain of a statute that does not hurt him, in anticipation of injustice that might be done to him under it in other states of case.

A more serious obstacle to the affirmance of the judgment is presented in the contention that the trial court committed prejudicial error in rejecting competent evidence offered by the railroad company, and in misinstructing the jury.

The uncontradicted evidence shows that this line of railroad from Winchester to Irvine was lately constructed and that the operation of freight trains commenced in April, 1915. It should be kept in mind that the information charged the failure to run a passenger train on January 5, 1916, and it is conceded that regular passenger train service was not put into operation on this road until May, 1916, a little over a year after it had been in use by freight trains. The chief, and in fact the only, defense of the railroad company was that it did not operate passenger trains regularly, or except occasionally, on the road until May, 1916, because it was not safe until this time to operate regular passenger trains over the road. The road was intended for both freight and passenger traffic, and at the time of this trial, in June, 1916, both freight and passenger trains were being run regularly and daily over the road.

It will be observed that according to the literal reading of the statute the railroad company was required to run at least one passenger train each way on every day of the year over this line, Sundays excepted, and it be-

ing admitted that it did not on a day in January, 1916, other than Sunday, operate any passenger train on this line of road, it is the contention of the Commonwealth that after passing the technical defenses set up by the company, it had no defense to the prosecution on the merits of the case. If this contention is sound, the alleged error of the trial court in refusing to admit evidence offered in behalf of the railroad company that it could not, safely, in January, 1916, operate passenger trains over the road, was not a material error, because under the construction of the statute insisted on by the Commonwealth Attorney and the admitted facts, the trial court might properly have directed the jury to return a verdict for the Commonwealth, leaving to the jury only the amount of the penalty that should be assessed.

We do not, however, find ourselves able to agree with the views pressed on our attention by the Commonwealth's Attorney, who has filed the principal brief in this case for the Commonwealth and indeed the only one that urgently insists that no prejudicial error was committed by the trial court. In the enactment of this statute it was the manifest purpose of the legislature to compel railroad companies to operate over their lines of railroad passenger trains in the manner directed in the statute in the absence of a lawful excuse and it is fair to assume that it was adopted because some railroad company had failed and refused without lawful and sufficient excuse to operate passenger trains on some part of its road that exceeded five miles in length.

That the legislature had ample power to enact this statute, we have no doubt, nor have we any doubt that a railroad company willfully violating its provisions without a lawful and sufficient excuse should be subjected to the penalties denounced by the statute. But at the same time we think that a railroad company may excuse its failure to operate passenger trains daily, except Sunday, when the road-bed, or some part thereof, is, without the fault or negligence of the company, in such condition as that it would not be safe to operate passenger trains over it, as, for example, where the road is newly constructed and physical conditions which the company is endeavoring with reasonable promptness to remedy have put the road-bed in such condition as to make it unsafe to operate passenger trains over it, or

where by reason of some unexpected or unanticipated condition arising on an old road the company is temporarily prevented from operating over it with safety passenger trains.

But a railroad company that violates the statute should not be excused on account of the condition of the road-bed, although it might be unsafe to operate passenger trains over it, if this condition has been brought about by the negligence of the railroad company in failing to keep the road-bed in good repair, or is due to other reasons manifesting a purpose on the part of the company to produce causes that might make it unsafe to operate these trains, or where it appears that the railroad company intentionally refuses to operate passenger trains over a road that is, in the opinion of competent persons, safe for the transportation of such trains. In other words, the statute should be given a reasonable construction, one that will be fair alike to the railroad companies as well as to the public, and that will effect the legislative intent in its enactment and also protect the interests of the public without imposing harsh and unreasonable conditions on the railroad company or conditions that could not be complied with by it, having due regard for the safety of the traveling public.

In Chesapeake & Ohio Ry. Co. v. Commonwealth, 119 Ky. 519, we had a question very similar to this, in which there was involved the proper construction of section 795 of the Kentucky Statutes making it the duty of railroad companies to furnish separate coaches or cars for the use of white and colored passengers and providing heavy penalties to be imposed on any railroad company that failed to obey the statute. That statute is as peremptory in its language as is this one, and it was there urged for the Commonwealth that no excuse would relieve the railway company from the penalty of the statute if it operated passenger trains in violation of the provisions of the statute.

The facts in that case were these: On February 19, 1903, a train operated by the company left Louisville at 8:30 a. m., its usual time, on its way to Lexington, Ky., without the separate coach which it had always carried until that morning. It further appeared that the company operated another train to which there was attached a separate coach, and this train running on reg-

ular schedule time always arrived in Louisville several hours before the departure of the 8:30 train for Lexington, and in ample time to attach to the Lexington train the separate coach it carried to Louisville. But on this day the train carrying the separate coach which should have arrived in Louisville at 8:00 p. m. on February 18, some twelve hours before the Lexington train left, was delayed by a landslide on account of which it did not reach Louisville until after the Lexington train had left there on its usual time, and so this train did not carry a properly equipped separate coach. It was the contention of the Commonwealth in that case that the facts stated did not excuse the company in operating its trains without a separate coach, as it should have taken precautions to guard against such an emergency as occurred. But this court held that the trial court should have instructed the jury that if they believed from the evidence that the operation of the train on February 19th without a separate coach was caused by an unavoidable accident or casualty which the company by ordinary prudence could not have anticipated or guarded against, they should find it not guilty, quoting with approval Bishop on Statutory Crimes, sec. 132, the following: "Again, a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act, because the common law requires such concurrence to constitute a crime. A case of overwhelming necessity, or of honest mistake of facts will thus be excepted out of a general statutory prohibition."

The general rule laid down in that case and the principles of law there announced should, we think, be applied to the facts of this case. It is true the railroad company failed to operate a passenger train on the day in question, but it offered a large quantity of evidence, all of which was excluded by the trial court, showing that its failure to operate passenger trains on this day and other days was due solely to the dangerous and unsafe condition of the newly constructed railroad, which conditions it was endeavoring with all reasonable diligence to remedy. It further offered to show that as soon as the road-bed in the exercise of reasonable diligence could be placed in such condition as to enable it with reasonable safety to operate passenger trains, it did operate them daily and continuously. That while it did

operate freight trains over this road before January, 1916, the operation of these trains was attended with many derailments due to the condition of the track and road-bed, and their movement, although very slow, was accompanied with considerable danger to the crews in charge.

The Commonwealth did not introduce any evidence, except to show the mere fact that freight trains were operated over the road prior to January, 1916, tending in any manner to show that trains containing passengers could have been run with safety over the road. In short, the Commonwealth, on evidence that the company had run freight trains over the road prior to January, 1916, and had not operated a passenger train on January 5th, rested its case. And the trial court, after excluding the evidence offered by the company to show the condition of the road-bed and track, instructed the jury, in substance, that if they believed from the evidence that the company on January 5th, 1916, failed to run both ways on said line of railroad a passenger train or a mixed train carrying passengers, they should find it guilty. This instruction would have been correct if the railroad company could not have shown in its defense that it had a lawful and sufficient excuse for not operating passenger trains on January 5th, but of course it was radically wrong if the company was entitled to make its offered defense and show why it could not and did not operate passenger trains on this day. In excluding this offered evidence the court took away from the company the only defense it had. If this evidence had been allowed to go to the jury the court should have directed a verdict in favor of the railroad company, because there was no evidence contradicting the witnesses for the railroad company who testified that without fault or negligence on its part, or purpose to evade or avoid the statute, it had failed to operate passenger trains on the day charged.

On the return of the case the railroad company should be permitted to introduce this offered evidence, and if the evidence for the Commonwealth does no more than show substantially what is shown in this record, the court should instruct the jury to find a verdict for the railroad company.

Wherefore, the judgment is reversed, with directions for a new trial not inconsistent with this opinion.