Rockingham
No. 78-154

THE STATE OF NEW HAMPSHIRE

v.

COURT DORSEY

December 6, 1978

*Thomas D. Rath*, attorney general, and *John C. Boeckeler, Richard B. McNamara, Richard B. Michaud* and *Peter W. Heed*, assistant attorneys general, and *Peter W. Mosseau*, attorney, by brief, for the State.

*Court Dorsey*, by brief and orally, pro se.

*H. Jonathan Meyer*, of Concord, by brief and orally, for Civil Liberties Union, amicus curiae.

GRIMES, J. The issue we decide in this criminal trespass case is whether the trial court erred in ruling that the statutory defense of competing harms, RSA 627:3, is not available to one charged with criminal trespass for occupying the construction site of a nuclear power plant. We hold that no error was committed.

Defendant was arrested during a mass occupation of the construction site of the Seabrook Nuclear Power Plant. He was charged with criminal trespass, RSA 635:2, elected to represent himself, and was tried before a jury, and was convicted. His exceptions were transferred by *Mullavey*, J.

Prior to trial the defendant gave notice pursuant to Superior Court Rule 102 that he intended to rely upon the competing harms statute, RSA 627:3, as a defense. At trial the court ruled that the competing harms statute would not be permitted as a defense and noted defendant's exception. The court also ruled, however, that defendant could introduce evidence to show that he did not knowingly violate the trespass statute; that, said the court, "[is] the sole issue upon which that [the competing harms] statute may be used." The defendant sought to introduce evidence bearing on this defense and on the danger of nuclear power, but it was excluded by the court. Defendant read the statute to the jury during his final argument, and stated that he relied on it when he entered the site and therefore did not know he was breaking the law.

■ ■ The trial court was correct in ruling that the competing harms defense did not apply to this case. RSA 627:3 I reads in part as follows:

> Conduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged. . . .

It establishes a statutory defense akin to the common-law defense of necessity. *See Aldrich v. Wright*, 53 N.H. 398 (1873); *State v. Jackson*, 71 N.H. 552, 53 A. 1021 (1902). These and other early cases elsewhere deal with simple situations, such as killing mink out of season to protect valuable geese, and keeping a child from school without permission because of serious illness. They, like the classic situations contained in the comments to RSA 627:3, relate to factual

matters that laymen sitting as a jury have the competence to decide. They deal with dangers that the average person can recognize and about which there can be no dispute.

RSA 627:3 "is based largely on N.Y. § 35.05(a) and states what the Model Penal Code calls the 'choice of evils' doctrine." Report of the Commission to Recommend Codification of Criminal Laws § 572:3, at 19 (1969).

The pertinent comment to the Model Penal Code states that for the defense to be available, the issue of competing values must not have been foreclosed by a deliberate legislative choice. Model Penal Code § 3.-2, Comment No. 1 (Tent. Draft No. 8, 1958). In the context of the present dispute, however, both the legislature of the State and the Congress of the United States have made deliberate choices regarding nuclear power. *See, e.g.*, RSA ch. 162-B; 42 U.S.C. 2011 (1970). RSA ch. 162-H established an Energy Facility Evaluation Committee to determine, among other things, whether any proposed site and facility will "unduly interfere with . . . the public health and safety." RSA 162-H:9 I(a). Section 1 of RSA ch. 162-H mandates that "undue delay in construction of any needed facilities be avoided." Having spoken so forcefully in support of nuclear power, it is inconceivable that the legislature would intend that nuclear power be considered such a harm as to justify individuals in breaking the law. We are confident that it was not intended that such matters be included within the scope of RSA 627:3.

■ ■ Nor were matters of this sort contemplated under the common-law defense of necessity. The common-law defense dealt with imminent dangers from obvious and generally recognized harms. It did not deal with nonimminent or debatable harms; nor did it deal with activities that the legislative branch of government had expressly sanctioned and found not to be harms. *See* G. Williams, Criminal Law: The General Part § 232, at 729 (2d ed. 1961) and cases cited therein. To allow nuclear power plants to be considered a danger or harm within the meaning of that defense either at common law or under the statute would require lay jurors to determine in individual cases matters of State and national policy in a very technical field. Competing factions would produce extensive expert testimony on the danger or lack of danger of nuclear power plants, and jurors in each case would then be asked to decide issues already determined by the legislature. The competing harms statute is intended to deal

only with harms that are readily apparent and recognizable to the average juror.

Defendant and others who oppose nuclear power have other lawful means of protesting nuclear power; therefore, they are not justified in breaking the law. LaFave and Scott, Criminal Law § 50, at 387 (1972). The act of criminal trespass was a deliberate and calculated choice and not an act that was urgently necessary to avoid a clear and imminent danger. The matter of the Seabrook Nuclear Power Plant has been before the regulatory agencies and the courts of both the United States and this State with a full opportunity for the opponents of nuclear power plant construction to be heard. Opponents still have the right to try to induce the people's representatives in Congress and the legislature to change the statutes. The fact that their efforts so far have failed does not make a case of necessity.

We have reviewed numerous cases and other sources with regard to the common-law defense of necessity and the statutory defense of competing harms. It would serve no purpose to review them here. It is enough to say that having done so, we hold that the defense of competing harms is not available in this State in the circumstances of this case. Defendant had no constitutional or statutory right to have it considered by the jury.

Nothing in this opinion should be construed as favoring or not favoring nuclear power. We deal only with the law as it relates to the defense relied upon. Nor do we pass upon the motives of the defendant. Good motives are not a defense to the commission of crime, except in a case of emergency not present here.

The court in its instruction told the jury that the competing harms statute applied only so far as defendant denied he acted knowingly, and that "defendant's conduct can be justified or excused only if he acted in a sense of urgency to avoid an imminent danger, and this is to be determined in accordance with the ordinary standards of reasonableness." The defendant took no exceptions to the court's charge although he was asked specifically if he found "any fault with the charge." For that reason he cannot now complain about the instruction. State v. Floyd, 116 N.H. 632, 365 A.2d 738 (1976).

Moreover, by allowing defendant this backdoor use of the competing harms statute, the court gave him the benefit of a defense to which he was not entitled. In any event, we find no error in the use of the term "imminent danger."

848

Defendant not only failed to except to his sentence or to the other portion of the charge, but he is foreclosed by the decision in *State v. Wentworth*, decided this date.

*Exception overruled.*

BOIS, J., did not sit; the others concurred.