STATE of Maine

v.

Aaron GREENWALD. (two cases)

Supreme Judicial Court of Maine.

Argued Nov. 9, 1982.

Decided Dec. 3, 1982.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Daniel G. Lilley, Naomi Honeth (orally), Portland, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS and WATHEN, JJ., and DU-FRESNE, A.R.J.

WATHEN, Justice.

Defendant Greenwald appeals from two separate jury convictions in Superior Court (Penobscot County) for operating a motor

vehicle while his license was under revocation pursuant to the Maine Habitual Offender Statute, 29 M.R.S.A. ch. 18–A (Supp. 1982–83).[1] Upon motion of the appellant the appeals were consolidated for briefing and oral argument. We deny both appeals.

At his first trial (CR–81–15), defendant was found guilty of having operated a motor vehicle on December 27, 1980 while an habitual offender and under order from the Secretary of State prohibiting such operation. Defendant was fined $1,000.00 with all but $350.00 suspended. A transcript of that proceeding was submitted to this Court.

In the second case (CR–81–14), defendant was similarly found guilty of operating a motor vehicle while an habitual offender. That incident occurred on November 26, 1980. The sentence in that case was to the Penobscot County Jail for a term of sixty days, all but 10 days suspended. No transcript of that proceeding was included as part of the record before this Court.

At his first trial, defendant testified that he had driven his car on the evening of December 27, 1980 in order to obtain kerosene for a portable heater. At that time, the furnace in the defendant's house was not working and the pipes were allegedly on the verge of freezing due to the exceptionally cold weather. The heater was to be used to warm the pipes. Defendant's household included two young children and his wife. The wife was alleged to be incapacitated due to a recurring gall bladder attack. Defendant testified that he had been unable to reach a sister-in-law to ask for her assistance in obtaining the kerosene. No other efforts, however, were made to seek assistance.

Although there is no transcript before this Court with respect to the second trial, at his first trial defendant testified that he was not represented by counsel at any of the proceedings which resulted in the underlying convictions. Purportedly, he simply paid the fines assessed and was never advised that those adjudications could provide a basis for a later conviction under 29 M.R.S.A. § 2298 (Supp.1982–83).[2]

The defendant raised two points on appeal: (1) pursuant to *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), the prior uncounseled traffic convictions resulting from his pleas of guilty may not constitutionally serve as the basis for enhancing the applicable penalty to one of incarceration under the Maine Habitual Offender Statute; and (2) he was entitled at his first trial to present evidence and to have the jury instructed as to the defense of competing harms as set forth in 17–A M.R.S.A. § 103(1). (Pamph.1982).

### I.

The constitutional issue presented by *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) arises only upon the imposition of an enhanced penalty of incarceration. Therefore, the relevance of *Baldasar* to this appeal would only attach to the second case where a jail term was actually imposed. We need not address this issue, however, as the defendant expressly waived it at oral argument on the basis of this Court's recent opinion in *Piacitelli v. Quinn,* 449 A.2d 1126 (Me.1982).

### II.

Throughout the course of his first trial, defendant attempted to establish that he was justified in driving his car even though his license had been revoked, on a theory of competing harms. 17–A M.R.S.A.

1. The underlying basis for the revocation of defendant's license was the commission of eleven moving vehicle violations within a five-year period.

2. 29 M.R.S.A. § 2298 provides in relevant part:
   It shall be unlawful for any person to operate any vehicle in this State while the revocation prohibiting its operation remains in effect. Any person found to be an habitual offender under this chapter, or former chapter 18, who is thereafter convicted of operating a motor vehicle in this State while the revocation prohibiting operation is in effect shall have committed a Class C crime.

§ 103(1).[3] Defendant sought to rely upon potential harm to his home and family in justifying his operation. At trial, defendant called as a witness a plumber who had visited the defendant's residence on the day after the driving incident and who would testify that he found the pipes frozen. When first called, the witness could not be found. The Court then recessed while the defendant unsuccessfully attempted to locate the witness. After an additional statement by defense counsel of the testimony which would be obtained from this witness, the court declined further delay. The court ruled that the suggested testimony would not be relevant in that the "competing harms" defense could not be raised to the defense of property (i.e., defendant's pipes). The defendant argues on appeal that the court erred in refusing to further delay the proceeding and erred in restricting the competing harms doctrine to defense of persons.

■ Generally speaking, the grant or denial of a motion for continuance is within the sound discretion of the trial justice and the ruling should not be set aside in the absence of a showing of an abuse of discretion. *E.g., State v. Holt,* 391 A.2d 822, 825 (Me.1978). Although the defendant in the case at bar did not formally move for a continuance, the same discretionary principles should apply to a refusal to delay a proceeding.

■ In ruling on the relevance of a witness' testimony, the trial justice must balance any likely probative value against such considerations as undue delay, waste of time and the danger of misleading the jury. *See, e.g., State v. Morton,* 397 A.2d 171, 179 (Me.1979); Rule 403, M.R.Evid. The absent plumber was to testify about his visit to the Greenwald house on the day *following* the incident. His testimony, as offered, would have gone only to the condition of the premises (the frozen pipes and the cold temperature of the house), facts which were essentially cumulative and uncontroverted. Moreover, in refusing further delay the trial justice correctly ruled that the competing harms defense does not apply to the defense of property.

Defendant attempts to rely upon *State v. Kee,* 398 A.2d 384 (Me.1979) to support the proposition that section 103(1) does provide a defense in cases where only damage to property is involved. *Kee* dealt with a case of criminal trespass on the Maine Yankee Nuclear Power Plant. The defendant in *Kee* attempted to raise the defense on the theory that he was acting in defense of workers and others in the area. Defense of property was not in issue. Defendant Greenwald attempts to rely on *dictum* of that Court, in which the Court made a reference to "property." The Court there stated: "That defense is not in play merely because a defendant subjectively believes that a threat of imminent physical harm to person or *property* exists; it is further requisite that it be shown as a fact that such a physical harm is imminently threatened." *State v. Kee,* 398 A.2d at 385. (emphasis added)

Neither the statute nor case law supports the *dictum* upon which defendant relies. Section 103(1) refers only to "conduct which the actor believes to be necessary to avoid imminent physical harm to himself or another ...." Analysis of the legislative history confirms that the legislature purposefully limited the scope of the competing harms defense.

■ Section 103 was modeled after section 627:3 of the New Hampshire Criminal Code. 17–A M.R.S.A. § 103 comment.[4]

---

3. 17–A M.R.S.A. § 103(1) provides:
   Conduct which the actor believes to be necessary to avoid imminent physical harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged. The desirability and urgency of such conduct may not rest upon considerations pertaining to the morality and advisability of such statute.

4. The New Hampshire statute in turn is based largely on the Model Penal Code's "choice of evils" doctrine. *State v. Dorsey,* 118 N.H. 844,

The Maine legislature narrowed "harm" as existed in the New Hampshire Code to "imminent physical harm." It is a well founded principle that a statute should be construed to give effect to the intent of the legislature. It can be assumed that changes made in a statute which was drawn from a similar statute in another jurisdiction must have been for the very purpose of avoiding the construction developed elsewhere. *See Wescott v. Allstate Insurance,* 397 A.2d 156, 169 (Me.1979); *and generally* 2A Sutherland, *Statutory Construction* § 52.02 (4th Ed.1973).

■ Defendant also argues that the trial justice erred in refusing to instruct the jury on the competing harms defense. The trial justice declined to instruct the jury ruling that there was insufficient evidence upon which the jury could find an imminent danger of *physical* harm.

A party is not entitled to have a requested jury instruction given, even if it states the law correctly, if it is not supported by the facts of the case.[5] *Guilford Yacht Club Association v. Northeast Dredging,* 438 A.2d 478, 482 (Me.1981). *Towle v. Aube,* 310 A.2d 259, 266 (Me., 1973). While the theory of the defense must be submitted to the jury provided it has some evidentiary support, it is not error "to refuse to allow the jury to consider an impossible or impracticable theory which finds no rational basis in the evidence." *State v. Carmichael,* 405 A.2d 732, 736 (Me.1979).

■ In this case, the burden was on the defendant to ensure the presence of evidence sufficient to raise a reasonable doubt that physical harm was imminently threatened. *Kee,* 398 A.2d at 386.[6] Review of the record evidence in this case reveals that the trial justice was correct in concluding

that defendant failed to meet his burden. The only relevant facts which were established were that (1) the furnace was not working, (2) the house was old with poor insulation, (3) it was a cold evening, and (4) indeed a heater was rented to warm the pipes. The trial justice did not err in ruling that defendant failed to meet his burden.

The entries in each case are:

Judgment of conviction in both CR–81–14 and CR–81–15 affirmed.

All concurring.

---

395 A.2d 855, 856–57 (1978). The Model Penal Code, however, has a much broader sweep and proposes a simple balancing test which is not limited in scope to physical or any other specified harm. Comment, Model Penal Code 23.02 (Tent. Draft No. 8, 1958).

5. Of course, as to the *property* harm theory, the presiding justice may properly refuse an

instruction that is not sound law. *State v. Bennett,* 416 A.2d 720, 723 (Me.1980).

6. Only after defendant establishes that imminent physical harm was *in fact* threatened does the reasonableness of his response become an issue. *Kee,* 398 A.2d at 386.