STATE of Maine

v.

Harry CROCKER.

Supreme Judicial Court of Maine.

Argued Jan. 16, 1986.

Decided Feb. 25, 1986.

Michael E. Povich, Dist. Atty., Carletta M. Bassano (orally), Asst. Dist. Atty., Machias, for State.

Silsby & Silsby, Sandra Hylander Collier (orally), Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Defendant Harry Crocker appeals from three convictions resulting from a jury trial in Superior Court (Washington County). Defendant was convicted of two counts of criminal threatening with the use of a dangerous weapon, 17-A M.R.S.A. § 209 (1983), and one count of reckless conduct with the use of a dangerous weapon, 17-A M.R.S.A. § 211 (1983).[1] Defendant's principal claim on appeal arises from the Superior Court's refusal to instruct the jury on the competing harms defense and the justifiable use of deadly force in defense of persons. We find no error and affirm the convictions.

I.

The relevant facts of this case may be summarized as follows: On June 28, 1983, defendant engaged in a confrontation with Burleigh Sprague in Bucks Harbor. One of the two counts of criminal threatening and the single count of reckless conduct relate to this incident. During the course

1. Both offenses are Class D crimes, which, when committed with the use of a dangerous weapon, are enhanced to Class C offenses. *See* 17–A M.R.S.A. § 1252(4) (1983).

of the evening defendant also confronted Owen Moody, thus providing the basis for the second count of criminal threatening. Burleigh Sprague testified that at approximately 6:00 p.m. he received a phone call from his wife stating that the defendant was at the Sprague residence threatening "to get" Sprague. Sprague returned home accompanied by Dennis Moody, Phil Moody, and Norman Johnson and found that defendant had left. Sprague and the others, with the addition of Mark Sprague, set out to find him. Sprague stated that he "just wanted to talk with" Crocker.

The group encountered defendant Crocker in his automobile travelling through Bucks Harbor and followed him to his mother's house where Crocker was living at the time. Sprague testified that upon arriving in his mother's driveway, Crocker, accompanied by Emery Miller, jumped out of his vehicle with a .22 caliber revolver in his hand. Sprague proceeded past the Crocker residence and turned around at a cemetery at the end of the road.[2] After turning around, Sprague entered a nearby home and called the police. He then returned to his vehicle intending to attempt to drive by the Crocker home and return to the main road. As he drove toward the Crocker home, however, he saw the defendant in the yard still holding the gun and stopped the car about one hundred yards from Crocker.

Emery Miller approached the Sprague vehicle making threats and calling on Sprague to fight. Sprague got out of the vehicle to talk to Miller. During this discussion, Sprague also saw and heard the defendant hollering threats and shaking his fists. Sprague then heard a shot and saw the gun, pointed in the air, recoil. After the first shot, Sprague called Miller a "boy" and the latter became very angry. As Miller approached Sprague, Sprague removed a baseball bat from his car and placed it on his shoulder. While continuing

to converse with Miller, Sprague saw Crocker aim the gun at him. He ducked behind his car and immediately heard another gunshot. Thereafter, a neighbor intervened and attempted to calm things down. Sprague returned to the neighbor's house to await the arrival of police.

Shortly after Sprague had first driven by the Crocker home, Owen Moody and Daniel Johnson arrived at the scene in a different automobile driven by Moody. As they drove by the Crocker home, the defendant ran toward the car pointing his pistol into the window of the car. Moody drove past the defendant's home and encountered Sprague about to call the police. He then turned his vehicle around and returned to the main road. After Moody's vehicle had returned to the main road, someone at the Crocker home moved a car from the driveway into the road so as to block passage from the cemetery end of the road, where Sprague and company remained, to the main road.

The defense witnesses relate a different version of events. Julie Sprague, cousin of Burleigh Sprague and girlfriend of defendant's brother, testified that Burleigh Sprague's car, with Dennis Moody driving, drove by the Crocker home several times at a fast rate of speed. This reckless driving endangered a small boy playing in the area, so defendant's brother blocked the road with a car to prevent further passage by the house.

As to the confrontation between Burleigh Sprague and Emery Miller, a prosecution witness testified that Sprague carried the bat when he first got out of his car to talk to Miller but that he held the bat low and did not threaten Miller with it. Julie Sprague testified for the defense that Burleigh Sprague was swinging the bat but never swung it at Miller. Hubine Sprague and the defendant's brother also testified that Burleigh Sprague was swinging the bat, but they provided no further detail.

---

2. Sprague testified that the road was impassable beyond the cemetery, except to trucks and four wheel drive vehicles. Witnesses for the defense testified that the road was passable and provided a means of egress.

The jury returned a verdict of guilty on all three counts and defendant now appeals from the resulting convictions.

## II.

The presiding justice instructed the jury on the justifiable use of nondeadly force in defense of self or a third person, 17–A M.R.S.A. § 108(1) (1983) and in defense of premises, 17–A M.R.S.A. § 104(1) (1983). Defendant's request for a similar instruction with regard to the use of deadly force, 17–A M.R.S.A. § 108(2) (1983), was refused. In addition the court refused to instruct on the doctrine of competing harms. 17–A M.R.S.A. § 103(1) (1983).

■■■ The court committed no error in refusing to instruct on the use of deadly force because the issue was not generated by the evidence. To warrant an instruction, evidence must be sufficient to "make the existence of all facts constituting the defense a reasonable hypothesis for the factfinder to entertain." *State v. Glidden,* 487 A.2d 642, 644 (Me.1985). The statute dealing with deadly force provides in relevant part:

**2.** A person is justified in using deadly force upon another person:

**A.** When he reasonably believes it necessary and he reasonably believes such other person is:

(1) About to use unlawful, deadly force against himself or a 3rd person.

17–A M.R.S.A. § 108(2) (1983). Defendant did not testify, and thus, there is no direct evidence as to any belief that he might have entertained when he confronted either of the victims. Beyond that, the circumstances would not support the conclusion that defendant reasonably believed in the necessity of using deadly force, without retreating, in order to protect himself. When defendant fired the gun, Sprague

was standing at a distance of 100 yards. Similarly, defendant could not have reasonably believed that deadly force was about to be used against Emery Miller, nor could he have reasonably believed that deadly force, as opposed to physical intervention, was necessary. The court properly refused the requested instruction.

Defendant backed up his request for a deadly force instruction by requesting an instruction on competing harms. Our criminal code provides in relevant part:

**1.** Conduct which the actor believes to be necessary to avoid imminent physical harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged.

17–A M.R.S.A. § 103(1) (1983). The presiding justice denied the request, concluding that instructions on section 104(1) and section 108(1) "cover the factual situations generated in this case." Essentially defendant argues that the risk of harm involved in his conduct was outweighed by the risk of harm presented by the conduct of Sprague. We need not weigh the opposing harms in the balance [3] because the existence of the specific defenses in sections 104 and 108 precludes resort to the more general provision dealing with competing harms.

■■■ The competing harms defense was not intended as an overlay of self defense, but rather was designed to codify the principle inherent in the common law defense of necessity. *See State v. Dorsey,* 118 N.H. 844, 845, 395 A.2d 855, 856 (1978). The comments to section 103 state: "The problems covered by this section do not seem to be the subject of statutory or case law." An examination of the Model Penal Code, progenitor of section 103, makes

**3.** The Model Penal Code, on which section 103 is based, explicitly contains the following limitation: "The necessity must be avoidance of an evil greater than the evil sought to be avoided by the law defining the offense charged." Comment, Model Penal Code § 3.02 (Tent.Draft No.

8, 1958). In the words of section 103, it is not readily apparent that the evil presented by Sprague *outweighed* the evil sought to be prevented by the statutes prohibiting criminal threatening and reckless conduct with the use of a dangerous weapon.

clear that the competing harms defense applies only in the absence of explicit legislative provision. The Code expresses the following limitation that is implicit in section 103:

> (1) Conduct which the actor believes to be necessary to avoid an evil to himself or another is justifiable, provided that:

> . . . . .

> (b) neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved:

Model Penal Code § 3.02 (Tent.Draft No. 8, 1958). The comments to the Code state that in order for the defense to be considered, "[t]he issue of competing values must not have been foreclosed by a deliberate legislative choice, as when the law has dealt explicitly with the specific situation that presents the choice of evils." *Id.* Sections 104 and 108 of the Maine Criminal Code deal specifically and comprehensively with the use of force in defense of self, third persons and premises. A defendant who is unable to present an effective defense under these specific provisions is precluded from justifying his use of force under the general provision for competing harms. No error was committed in the present case.

The remaining issues raised on appeal are lacking in merit and require no discussion.

The entry is:

Judgments of conviction affirmed.

All concurring.