2001 ME 23

### STATE of Maine

v.

### Patricia CASWELL.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 6, 2000.

Decided Jan. 30, 2001.

David W. Crook, District Attorney, Janice Stuver, Asst. Dist. Atty., Augusta, for State.

David M. Sanders, Esq., Livermore Falls, for defendant.

Before: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Patricia Caswell appeals from a judgment entered in the Superior Court (Kennebec County, *Atwood, J.*) following a jury trial convicting her of a third offense of operating under the influence. The operating under the influence charge was a Class D offense pursuant to 29–A M.R.S.A. § 2411 (1996 & Supp.2000) with two prior convictions as aggravating factors.[1] Caswell contends that the court erred in (1) ruling that a competing harms justification, 17–A M.R.S.A. § 103(1) (1983)[2] was not generated by the evidence, and (2)

---

1. Upon conviction, the Superior Court sentenced Caswell to six months in the county jail, all but thirty days suspended with probation for one year, a fine of $1000, and a four-year suspension of her driver's license and registration privileges. Pursuant to 29–A M.R.S.A. § 2411(5)(C), the thirty days' jail time, the $1000 fine, and the four-year suspension of driving privileges were mandatory minimums for conviction of a third offense of operating under the influence.

2. 17–A M.R.S.A. § 103(1) reads as follows:

**§ 103 Competing harms**
    1. Conduct which the actor believes to be necessary to avoid imminent physical harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged. The desirability and urgency of such conduct may not rest upon considerations pertaining to the morality and advisability of such statute.

excluding expert testimony in support of her competing harms justification. We affirm.

## I. CASE HISTORY

[¶ 2] On August 1, 1996, Caswell and a man with whom she had a prior intimate relationship spent the evening drinking alcoholic beverages at bars in the Augusta area. Although the couple was using Caswell's vehicle, the man was driving because Caswell had just regained her driving privileges and did not want to drive after consuming alcohol.

[¶ 3] As the evening progressed, Caswell testified that she began asking the man to take her home because she had to work the next day. Caswell testified that the man was drunk and angry and that he refused to take her home, ultimately taking her to his residence instead. Once at the residence, Caswell testified that she began to walk away. However, her companion followed her in her vehicle and demanded that she get in and return to the residence. Caswell testified that she consented to get in and return to the residence because she was afraid. Caswell testified that she then agreed to have sexual intercourse with the man because she believed that she was not going to get home until she did. During the course of the sexual encounter, Caswell testified that she was forced to engage in several degrading sexual acts which she resisted. Ultimately, she pushed the man off her and left the residence.

[¶ 4] Caswell testified that when she left, her attacker was lying on the bed, that she did not know whether or not he was passed out, and that she did not recall him saying anything to her as she left. Caswell also testified that she did not know whether or not the man would follow her, but that she was afraid he was going to "get ahold" of her again.

[¶ 5] After leaving the residence, Caswell drove her vehicle to an Irving station in Augusta. There she stopped, entered the station, and purchased a package of cigarettes. Although she stopped, Caswell testified at trial that she thought that her attacker was following her. When she stopped, Caswell also saw two Augusta police officers parked at the Irving station. She did not approach the officers. Caswell testified that she was not about to tell two strange officers what had happened to her and that she would have approached the officers only if she had seen her attacker coming toward her while she was at the Irving station.

[¶ 6] Officer Struk of the Augusta Police Department was one of the officers in the Irving parking lot. He saw Caswell's pickup truck pull rapidly into the parking lot and shortly thereafter leave at a high rate of speed. He followed Caswell's truck in his cruiser and estimated that it was travelling at approximately sixty-five miles-per-hour in a forty-five mile-per-hour zone. He signaled Caswell to stop and she did. When Officer Struk approached Caswell and requested her license and registration, he saw that she was crying, and he detected a strong odor of alcoholic beverages. Caswell informed Struk that she had just broken up with her boyfriend and admitted that she had been drinking. Caswell slipped on the truck running board when she exited and performed poorly on field sobriety tests. Struk took Caswell to the Augusta police station where a breathalyzer test indicated a blood-alcohol level of .12 percent.[3] Caswell was summonsed for operating under the influence.

---

**3.** 29–A M.R.S.A. § 2411(1)(B) prohibits operating a motor vehicle while under the influ-

ence of alcoholic beverages or while having a

[¶ 7] At her District Court arraignment, Caswell entered a not guilty plea and transferred the matter to Superior Court for a jury trial. *See* M.R.Crim. P. 22(a). Prior to trial, the State sought to obtain pretrial rulings excluding (1) Caswell's competing harms justification, and (2) an expert Caswell proposed to offer in support of her justification. Ruling on those issues was deferred to trial.

[¶ 8] At trial, after the State rested and out of the presence of the jury, Caswell offered the testimony of a psychologist, Dr. Brian Rines, concerning the effects of the sexual attack which Caswell had told him had occurred. He asserted that because of the sexual attack, Caswell felt an "overwhelming need to escape," that her judgment was impaired, that it was rational for her to fear further assault, and that her emotions overrode her thought processes. Rines also testified that Caswell's unwillingness to report the sexual assault to the police officers at the Irving station was consistent with behavior of other sexual assault victims and that she was driven by a frantic need to get home. Rines indicated that Caswell viewed her home as a place of refuge, although from the evidence presented at trial it was apparent that the man who Caswell testified had attacked her knew where her residence was located. Rines also testified that Caswell told him that she continued to fear further attack even after she left the Irving station and that, in Rines's experience, Caswell's fear was reasonable and consistent with that of other victims of sexual assault.

[¶ 9] Following the testimony of Rines and Caswell, the court ruled that the facts presented did not generate the competing harms justification because there was no evidence of imminent harm to Caswell. Accordingly, Rines did not testify. The court permitted Caswell to testify to all of the events of the evening, including the sexual attacks. Although requested by the defense, the jury was not instructed on the competing harms justification. After the jury returned a guilty verdict and the court entered judgment. Caswell filed this appeal.

## II. COMPETING HARMS JUSTIFICATION

[¶ 10] The principal issue on appeal is whether the evidence was sufficient to generate the competing harms justification. There is a subsidiary issue of whether the court should have excluded the psychologist's testimony offered in support of the competing harms justification. Caswell argues that her subjective belief that a person who had attacked her might be chasing her is sufficient to generate a competing harms justification for her continuing to operate her motor vehicle in violation of 29-A M.R.S.A. § 2411, even after she had stopped for cigarettes at the Irving station and observed the police officers.

[¶ 11] In deciding whether a justification issue is generated, the evidence presented in support of the justification must be viewed in the light most favorable to the defendant. *See State v. Wilder*, 2000 ME 32, ¶ 23, 748 A.2d 444, 450. However, in competing harms cases, we also require that the evidence, construed most favorably to the defendant, must be sufficient to make the existence of all facts constituting the competing harms justification a reasonable hypothesis for the factfinder to entertain. *See State v. Poole*, 568 A.2d 830, 831 (Me.1990); *State v. Crocker*, 506 A.2d 209, 211 (Me.1986); *State v. Knowles*, 495 A.2d 335, 338 (Me.1985);

blood alcohol content of .08 percent or higher.

*State v. Glidden*, 487 A.2d 642, 644 (Me. 1985); *State v. Greenwald*, 454 A.2d 827, 830 (Me.1982).

[¶ 12] We have held that the competing harms justification is not generated because a defendant claims to subjectively believe that a threat of imminent physical harm exists. *See Poole*, 568 A.2d at 830; *State v. Kee*, 398 A.2d 384, 385–86 (Me.1979). Instead, we require that for the competing harms justification to be generated, the evidence, viewed most favorably to the defense, must demonstrate "as a fact" that physical harm was imminently threatened. *Poole*, 568 A.2d at 830; *Kee*, 398 A.2d at 385–86.

[¶ 13] On this record, there is no evidence that Caswell was imminently threatened with physical harm. When she left her attacker, Caswell testified that he was lying on a bed, that she did not know whether or not he was passed out, and that she did not recall him saying anything to her as she left. Beyond Caswell's testimony, the record contains absolutely no evidence that the person who Caswell asserted had attacked and degraded her was chasing her. Further, on the particular facts of this case, any justification for driving while under the influence in order to flee from the attacker's residence evaporated when Caswell stopped for cigarettes and observed the Augusta police officers.

[¶ 14] Caswell's argument would have us change the law regarding competing harms to (1) eliminate the requirement that the evidence demonstrate, as a fact, that physical harm was imminently threatened, and (2) allow a subjective belief that one is being pursued, without more, to become an excuse for operating under the influence or any other crime that may be subject to a competing harms justification.

[¶ 15] We decline Caswell's invitation to change the law to allow subjective beliefs alone to generate the competing harms justification. Based on our prior precedent, the trial court correctly ruled that the competing harms justification would be excluded because there was no evidence which, even construed most favorably to Caswell, suggested that physical harm to her was imminently threatened.

The entry is:

Judgment affirmed.

SAUFLEY, J., with whom DANA, J., joins, concurring.

[¶ 16] I concur in the opinion of the Court concluding that the trial court properly ruled that the competing harms justification was not generated by the evidence. I write separately, however, to address the meaning and importance to the analysis of Caswell's stop at the Irving station.

[¶ 17] On the night in question, Caswell's driving must be seen as occurring in two separate components: first, when she fled her attacker's residence, after she had been sexually assaulted, and second, when she left the Irving station, after she had stopped for cigarettes.

[¶ 18] In the first instance, Caswell was presented with only two viable alternatives. She could remain in the presence of her attacker in an isolated rural setting, or she could violate the law by driving away from the attacker while she was under the influence of alcohol. She presented evidence that he had, in fact, raped her, that he had followed her and prevented her from escaping previously that same night, and that she was subjectively terrified that he might attack her again. She also presented evidence that she was alone with him in a relatively isolated setting and that there were no alternative transportation options available to her.

[¶ 19] If we accept Caswell's testimony on these facts, which we must for purposes

of this analysis, we would have to conclude that she presented all of the elements necessary to generate the competing harms defense, had she been stopped while driving away from her attacker. 17–A M.R.S.A. § 103(1) (1983).

[¶ 20] Because she was not stopped at that point, however, the analysis does not end there. When Caswell arrived at the Irving station, the facts supporting her competing harms defense changed significantly. She was no longer faced with an impossible situation, where she had to decide between staying with the man who had just sexually assaulted her, or fleeing from her attacker by driving under the influence. By the time she had reached the Irving station, Caswell was away from her attacker's presence, in a public place, and in the presence of other people, including two uniformed police officers. At the same time, there was no evidence whatsoever that her attacker had, in fact, followed her. Moreover, once she reached the public area of the Irving station, she also had alternative methods of getting home.[4]

[¶ 21] When she chose, instead, to get back into her truck and drive home under the influence, she did so without the justification that initially existed when she left her attacker's trailer. In other words, she was no longer in the isolated setting where her only reasonable option was to violate the law. A defense that is valid initially may be lost by a change in circumstances. *See United States v. Bailey*, 444 U.S. 394, 412–13, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980);[5] *see also* LaFave & Scott, Substan-

tive Criminal Law 619–20 (1986 & Supp. 2001).

[¶ 22] Furthermore, Dr. Rines's testimony does not fill in the gap created by the absence of any objective facts to support Caswell's belief that she was imminently threatened with physical harm when she left the gas station. *See State v. Poole*, 568 A.2d 830, 831–32 (Me.1990). Caswell's *subjective* belief that she was under an imminent threat of physical harm, no matter how reasonable for someone in her condition, was not sufficient to generate the defense unless it was accompanied by objective facts supporting her fear. *See State v. Kee*, 398 A.2d 384, 385–86 (Me. 1979). At best, Dr. Rines's testimony, if accepted by the jury, would have demonstrated that Caswell's subjective fear was a natural by-product of the trauma inflicted on her by her attacker and that her actions were consistent with the actions of those who have just experienced sexual trauma. That evidence, although possibly bolstering the credibility of Caswell's testimony that she had, in fact, been sexually assaulted on the night in question, would not have provided the jury with any *objective facts* regarding the presence of a continuing threat from her attacker, or the absence of an alternative to driving herself home from the Irving station.

[¶ 23] Therefore, Dr. Rines's proffered testimony that Caswell felt *compelled* to drive home and was not thinking rationally would have provided the jury with two primary pieces of evidence. First, it could have provided evidence of the strength of her subjective belief that she was being

---

**4.** She could have, for example, called a taxi to take her home.

**5.** The United States Supreme Court in *Bailey* held that the defendants who broke out of jail because of repeated beatings by guards were not entitled to have duress or necessity defense go to the jury, because their initial de-

fense was lost when they failed to make a bona fide effort to terminate their unlawful conduct "as soon as the claimed duress or necessity had lost its coercive force." *United States v. Bailey*, 444 U.S. 394, 412–13, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

followed and at risk of physical harm, and second, it could have been understood to demonstrate that Caswell had not formed the *intent* to drive under the influence. Intent is not, however, an element of the crime of operating under the influence. Because a charge of OUI does not contain a mens rea element, Caswell's state of mind was irrelevant. *See Poole,* 568 A.2d at 832.

[¶ 24] Ultimately, Dr. Rines's testimony, no matter how compelling in its explanation of Caswell's emotional state, would not have been sufficient to demonstrate an *objective threat of harm to Caswell or the objective lack of a legal alternative to drunk driving. See id.* at 831; *State v. Moore,* 577 A.2d 348, 350 (Me.1990). Thus, the court did not err in excluding Dr. Rines's testimony or in declining to instruct the jury on the defense of competing harms.

[¶ 25] Accordingly, I join the Court in affirming the judgment of the Superior Court.

CALKINS, J., dissenting.

[¶ 26] I respectfully dissent. I disagree that in order to obtain a jury instruction on the competing harms defense Caswell had to demonstrate that the man who had followed her and then raped her earlier in the evening was still "in fact" following her when she drove to, and away from, the gasoline station.

[¶ 27] While I do not quarrel significantly with the recitation of facts in the opinion, I add a few more facts because in determining whether there is sufficient evidence to place an affirmative defense in issue, the evidence must be viewed in the light most favorable to the defendant. *State v. Michaud,* 1998 ME 251, ¶ 17, 724 A.2d 1222, 1230.

[¶ 28] Caswell's testimony is replete with her expressions of fear that her attacker would follow her and "get ahold" of her again. Her fear was based upon the fact that he had followed her previously and made her go with him. When she finally escaped from the rapist, she felt sick and wanted to go home. Caswell was a heavy smoker and needed a cigarette to calm herself. When she stopped at the gasoline station, near her home, to buy cigarettes, she believed her attacker was following her. The two police officers she saw in the parking lot of the gasoline station were both men. She testified that she was not about to tell two strange men what had happened to her.

[¶ 29] Dr. Rines, a clinical psychologist with experience in treating sexual assault victims, interviewed Caswell twice prior to the trial. In addition to testifying about Caswell's "overwhelming need to escape" after the rape, he testified that she was frantic, and her judgment was suspended. He testified that this is tantamount to a psychotic state, and it was rational for her to fear further assault. Caswell's history of being sexually abused as a child made the rape even more traumatic. Rines further testified that Caswell's addiction to nicotine was a powerful stimulus. She had a frantic need to get home, which is a place of refuge, where she could shower, use mouthwash, and be comforted by the home environment. Dr. Rines testified that Caswell told him that she continued to fear further rape even after she left the gasoline station, and in his experience, her fear was reasonable and consistent with that of other victims of sexual assault. He testified that the fact that Caswell did not want to disclose to the male police officers what had happened to her was consistent with the actions of other rape victims.

[¶ 30] I agree that a defendant's subjective belief that her conduct is necessary to

avoid the harm is not sufficient to generate a competing harms instruction. There must also be evidence that, in fact, the physical harm is imminently threatened. *See State v. Poole*, 568 A.2d 830, 831 (Me. 1990). However, we have never held that the competing harms defense requires that the defendant experience the actual conduct from which the defendant is fleeing. We only require that the *threat* of imminent harm exist. In this case the requirement that the *threat* of imminent harm actually exists is present. There is evidence that Caswell was chased after and raped a short time earlier. Although there is no evidence that the rapist was following her when she arrived at and departed from the gasoline station, the fact that he had followed after her earlier that evening is highly probative of the imminent nature of the threat that he would do so again. The existence of the imminent threat was reasonable because of what Caswell's assailant had done to her earlier in the evening. I do not agree with the concurring opinion that the stop at the gasoline station broke the chain of events and caused the threat of imminent harm to disappear. The threat of imminent harm, both before and after Caswell stopped at the station, was created by the rapist's actions that evening.[6]

[¶ 31] I strongly disagree with the assertion in the majority opinion that allowing the competing harms defense in this case would do away with the requirement that physical harm be imminently threatened and would create a change in the law

eliminating all requirements of the competing harms defense except the subjective belief of the defendant. If Caswell's testimony was only that she believed she was being followed, and if there was no evidence that she had been followed and raped shortly before her conduct that led to her detention by the police, then the assertion in the opinion would be correct. However, here we have significant evidence that makes the existence of the imminent threat more than subjective; the evidence is sufficient to demonstrate the reasonable and factual existence of an imminent threat.

[¶ 32] I also write separately to address the issue of the admissibility of Dr. Rines's testimony. His testimony was admissible because it was relevant to the issue of whether Caswell had a reasonable alternative to driving. By case law we have crafted an additional requirement to the competing harms defense, which is that there must be evidence that the defendant's conduct is necessary because there is "no reasonable alternative other than violating the law." *State v. Moore*, 577 A.2d 348, 350 (Me.1990). This element of the defense is a judicial interpretation of the requirement of showing the necessity of the conduct, that is, the conduct of the defendant can be seen as necessary to avoid the imminent physical harm when there is no reasonable alternative.[7]

[¶ 33] Because the trial court found that there was insufficient evidence to allow the competing harms defense to go to the jury,

6. I also disagree that we can speculate that once Caswell got to the gasoline station she could call a taxi to get her. We must take the evidence in the light most favorable to the defendant, and there is no evidence from which such inference can be made.

7. The common law defense of necessity required that there be no reasonable legal alternative to violating the law. *See United States*

*v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Although we have noted that the common law defense of necessity did not survive the adoption of the Criminal Code, *see State v. Poole*, 568 A.2d 830, 832, we have incorporated this common law requirement into the competing harms defense. *See Moore*, 577 A.2d at 350.

the court ruled that Rines's testimony was not relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401. Rines's testimony made the lack of a reasonable alternative more probable than it would have been without the evidence. Dr. Rines's testimony was that because Caswell was suffering from rape trauma, she was not acting as logically as someone who had not been raped might have acted. The fact that Caswell did not want to talk to the officers about what had just transpired was consistent with the actions of other rape victims. Because the lack of a reasonable alternative is an element of the defense, its existence is a fact of consequence. Dr. Rines's testimony was, therefore, relevant and should have been admitted.[8]

[¶ 34] A jury, upon hearing all of the evidence and upon being given a competing harms instruction, may have decided that the State had disproven the existence of the competing harm. It could have chosen not to believe that Caswell was raped or that she was afraid her rapist was following her. Perhaps the jury would have concluded that Caswell had a reasonable alternative. Caswell's jury, however, was not given the opportunity to determine the viability of the competing harms defense. In my opinion, the evidence, viewed in the light most favorable to Caswell, was sufficient to put the competing harms defense in issue, and the jury should have been given the opportunity to decide it.

---

8. I do not suggest that Dr. Rines's testimony was relevant for any issue other than Caswell's lack of a reasonable alternative to driving.