MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 49
Docket:        Aro-24-207
Argued:        December 11, 2024
Decided:       June 10, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

# STATE OF MAINE

v.

# HEATH G. DEMERCHANT

STANFILL, C.J.

[¶1]  Heath G. Demerchant appeals from a judgment of conviction for domestic violence assault (Class C) entered by the trial court (Aroostook County, *Nelson, J.*) following a two-day jury trial.  Demerchant argues that the trial court erred by denying his request for a jury instruction on the competing harms justification.  *See* 17-A M.R.S. § 103 (2025).  Because there was insufficient evidence of imminent physical harm to another to generate the justification, we affirm the judgment.

## I. BACKGROUND

[¶2]  On June 12, 2023, Demerchant was indicted for domestic violence aggravated assault (Class B), 17-A M.R.S. § 208-D(1)(D) (2023) (Count 1);[1] and domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1) (2023) (Count 2).[2]  The State later filed a supplemental indictment adding the charge of assault (Class C), 17-A M.R.S. §§ 207(1)(A), 1604(5)(B) (2023) (Count 3).[3]

[¶3]  After the State voluntarily dismissed Counts 1 and 3, the case went to trial on Count 2 on April 17 and 18, 2024.  The parties stipulated that Demerchant and the victim were family or household members as defined by Maine law, *see* 17-A M.R.S. § 207-A(1)(A), and that Demerchant had a prior domestic violence assault conviction within the last ten years, *see* 17-A M.R.S. § 207-A(1)(B)(1).  The State presented testimony from the victim, the victim's friend, two other witnesses who viewed the assault from the nearby Second Chances Thrift Store, and two police officers.

---

[1]  Title 17-A M.R.S. § 208-D(1)(D) has since been amended, though the amendment is irrelevant to the current case.  *See* P.L. 2023, ch. 465, § 4 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 208-D(1)(D) (2025)).

[2]  Title 17-A M.R.S. § 207-A(1)(B)(1) has since been amended, though the amendment is irrelevant to the current case.  *See* P.L. 2023, ch. 465, § 3 (effective Oct. 25, 2023) (codified at 17-A M.R.S § 207-A(1)(B)(1) (2025)).

[3]  Title 17-A M.R.S. § 1604(5)(B) has been amended several times since the date of the offenses, but the amendments are irrelevant to the current case.  *See* P.L. 2023, ch. 316, § 12 (effective Oct. 25, 2023); P.L. 2023, ch. 455, § 3 (effective Oct. 25, 2023); P.L. 2023, ch. 557, § 4 (effective Aug. 9, 2024) (codified at 17-A M.R.S. § 1604(5)(B) (2025)).

[¶4]  Viewing the evidence of the offense in the light most favorable to the State, *see State v. DesRosiers*, 2024 ME 77, ¶ 2, 327 A.3d 64, and the evidence supporting the claim of a competing harms justification in the light most favorable to Demerchant, *see State v. Caswell*, 2001 ME 23, ¶ 11, 771 A.2d 375, the following facts were established at trial.

[¶5]  Demerchant and the victim were married.  On May 9 in Presque Isle, Demerchant, a friend of the victim's, and the victim's seventeen-year-old child went to a nearby parking lot to work on a vehicle.  Before they left, the victim gave Demerchant her debit card so that he could use it to buy food for her child.

[¶6]  At some point later that day, Demerchant went to a nearby apartment to use illegal drugs.  The friend brought the victim's child home.  After hours had passed, the victim and her friend went to the apartment building looking for Demerchant.  After locating him at the apartment building, the victim learned that he did not have her debit card and had given it to another woman.[4]  In the hallway of the apartment building, Demerchant and the victim argued about the debit card and Demerchant's presence at the

---

[4] Demerchant testified that he went to the apartment building to find someone to go out and buy snacks, something he could not do himself because the victim's frequent telephone calls were interfering with his work on the friend's vehicle.  He testified that he gave the woman the debit card because his cousin told him the woman "seemed like the most sober one" there.

apartment where substance misuse was common. Demerchant grabbed the victim's arm and escorted her away from the apartment unit.

[¶7] Demerchant, the victim, and the friend left the apartment building to walk towards a parking lot; all the while, Demerchant and the victim continued to argue. While on the street walking toward the parking lot, Demerchant grabbed the victim's throat and pulled her toward him. The contact caused a red mark on the victim's neck. The victim was scared and asked the friend for help. Once in the parking lot, Demerchant backed the victim up against a vehicle, screamed in her face, and hit her. A witness who saw parts of the interaction called the police. Police officers arrived and arrested Demerchant.

[¶8] Following the State's presentation of evidence, Demerchant moved for a judgment of acquittal, which the court denied.

[¶9] Demerchant then testified in his own defense, recounting two instances of physical contact with the victim that could support the assault conviction. First, Demerchant testified that he grabbed the victim's arm and escorted her away from the apartment that was generally known for drug activity. He reasoned that this act protected the victim from entering the apartment because she had never been "part of that world."

[¶10]   Second, Demerchant testified to the assault in the parking lot behind the Second Chances Thrift Store.  He stated that the woman with the victim's debit card began approaching them, and the victim started to "freak out" and said, "[W]ait until she gets over here."  The victim also testified that when she and Demerchant were in the parking lot, the woman "returned with" her debit card and "came down the alley."  Demerchant testified that he believed the victim was about to assault the woman with the debit card.  Even by Demerchant's account, however, the woman with the card would not "even come close to [the victim] because of the way the [victim] was acting," and she went back up the alleyway away from the parking lot.  As the woman with the card retreated up the alleyway, Demerchant held the victim back from following her.

[¶11]   In essence, the evidence viewed in the light most favorable to Demerchant suggests that the victim was agitated about the woman having her card, that the woman appeared in an alley somewhere around Demerchant and the victim, and that the victim "ran for her."  Demerchant grabbed the victim's jacket to restrain her because he believed that she would contact the woman and hurt her in some way.  The woman with the card, however, did not come close because of the way the victim was acting.  Notably absent from the record

6

was any specific evidence about how far the victim and the other woman were from one another when Demerchant made physical contact with the victim.[5]

[¶12]  After the close of the evidence, Demerchant requested that the court provide the jury with an instruction on the competing harms justification pursuant to 17-A M.R.S. § 103.  Section 103 provides in relevant part:

> Conduct that the person believes to be necessary to avoid imminent physical harm to that person or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged.

*Id.* § 103(1); *see also State v. Nobles*, 2018 ME 26, ¶¶ 31-32, 179 A.3d 910 (discussing the evidentiary burden and elements required to generate a competing harms instruction).  The court denied the request.  In explaining its ruling, the court determined that the evidence surrounding Demerchant's physical contact with the victim in the apartment building was insufficient to generate the competing harms instruction.  With respect to Demerchant's contact with the victim in the parking lot, the court determined that despite Demerchant's testimony that the victim started in the direction of the woman

---

[5]  The trial transcript suggests that Demerchant's attorney used demonstrative maps or images during witness testimony to assist the jury in understanding the physical layout of the area and the distances between various landmarks such as the parking lot, the alley, and the apartment building. These visual aids were not offered or admitted in evidence and neither party requested that they be preserved for the appellate record, *see* M.R. Evid. 616(d) (providing that illustrative aids must be preserved for the record for appeal upon the request of a party).

holding her card, the woman with the card was still some distance away and was moving farther away at the time of the assault. The court ruled that therefore there was insufficient evidence that there was imminent danger of physical harm to another to generate the competing harms instruction.

[¶13] After the request for the instruction was denied, Demerchant's attorney argued during closing that Demerchant acted as a buffer between the two women and that he made contact with the victim to stop her from reaching the woman with the card. Demerchant's attorney concluded by discussing how "[Demerchant] dealt with a difficult situation the best that he could. He did not want [the victim] getting hurt or hurting someone else."

[¶14] In rebuttal, the State argued that there was no defense available to Demerchant that would justify his conduct and pointed out that when the jurors received the instructions from the court, those instructions would not include a section discussing justification.

[¶15] The jury returned a guilty verdict. The court sentenced Demerchant to five years in prison, with all but three years suspended and four years of probation.[6] Demerchant timely appealed. *See* M.R. App. P. 2B(b)(1); 15 M.R.S. § 2115 (2025).

---

[6] During the sentencing hearing, the court described the relevant mitigating factors as amounting to "a whimper at best" compared to the "near-deafening shriek" of the relevant aggravating factors.

## II. DISCUSSION

[¶16]  Demerchant argues that the evidence, viewed in the light most favorable to him, was sufficient to generate the competing harms instruction for the jury's consideration and that therefore the trial court erred by denying his request for the instruction.  Conversely, the State argues that the trial court correctly determined that the evidence was insufficient to generate the requested instruction because it did not demonstrate the required level of imminence.[7]

[¶17]  We will "vacate a judgment based on a denied request for a jury instruction if the appellant demonstrates that the requested instruction (1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave," and if the court's refusal to give the instruction prejudiced the requesting party.  *State v. Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278.  The

---

The court characterized Demerchant's record of fifty-one prior convictions as "ghastly" and "absolutely awful" and placed significant weight on the impact on the victim and Demerchant's attempt to influence the trial by tampering with the victim and the friend.  Demerchant filed an application for review of his sentence, and the Sentence Review Panel denied his request.  *See* 15 M.R.S. §§ 2151-2152 (2025); M.R. App. P. 20(a)(1), (f).

[7]  On appeal, the State also argues that the competing harms defense was unavailable to Demerchant because he was reckless or criminally negligent in bringing about the circumstances that created the alleged competing harms scenario.  *See* 17-A M.R.S. § 103(2) (2025).  Demerchant argues that the State waived this argument by not raising it before the trial court.  Because we conclude that there was insufficient evidence of a threat of imminent physical harm, we need not address this argument.

competing harms instruction is generated only if the evidence makes the existence of facts upon which the justification is based "a reasonable hypothesis for the fact finder to entertain*." Nobles*, 2018 ME 26, ¶ 31, 179 A.3d 910 (quotation marks omitted). Thus, before a court will give a competing harms instruction, there must be evidence that (if believed by the jury) would establish each element of the justification for the criminal conduct. *State v. Nadeau*, 2007 ME 57, ¶ 9 & n.1, 920 A.2d 452.

[¶18] In discussing the adoption of the competing harms justification, we have said that it "was not intended as an overlay of self defense, but rather was designed to codify the principle inherent in the common law defense of necessity." *State v. Crocker*, 506 A.2d 209, 211 (Me. 1986) (citing *State v. Dorsey,* 395 A.2d 855, 856 (N.H. 1978)). Indeed, because he claimed his assault of the victim in the parking lot was necessary to protect a third person, Demerchant was arguably precluded from receiving a competing harms justification instruction as a matter of law because defense of another is specifically codified in Maine's criminal code. *See* 17-A M.R.S. § 108(1) (2025). When examining the Model Penal Code, one of the "progenitor[s] of section 103," we noted that an inherent principle of the codification is "that the competing harms defense

applies only in the absence of explicit legislative provision."  *Crocker*, 506 A.2d

at 211-12.

> [I]n order for the defense to be considered, [t]he issue of competing values must not have been foreclosed by a deliberate legislative choice, as when the law has dealt explicitly with the specific situation that presents the choice of evils.  Sections 104 and 108 of the Maine Criminal Code deal specifically and comprehensively with the use of force in defense of self, third persons and premises. A defendant who is unable to present an effective defense under these specific provisions i*s precluded from justifying his use of force under the general provision for competing harms*.

*Id.* at 212 (emphasis added and quotation marks omitted); *see also* Model Penal

Code & Commentaries § 3.02 cmt. 2 at 13 (Am. L. Inst. 1962) (the competing

harms defense "cannot succeed if the issue of competing values has been

previously foreclosed by a deliberate legislative choice, as when some

provision of the law deals explicitly with the specific situation that presents the

choice of evils"); *State v. Smith*, 984 P.2d 1276, 1289 (Haw. Ct. App. 1999)

(concluding that the choice of harms defense was inapplicable when self

defense applied); *Keng Her v. State*, No. A-12155, 2018 WL 4492835, at *3 & n.9

(Alaska Ct. App. Sept. 19, 2018) (citing *Crocker*, 506 A.2d at 211) ("Although the

Alaska courts have not yet interpreted the scope of this provision, courts in

other jurisdictions have held that a general necessity instruction (or other

equivalent instruction) is precluded in situations where self-defense is

otherwise applicable."). Because, however, we determine that there was insufficient evidence of a threat of imminent physical harm, we need not resolve the extent to which the justification might otherwise be precluded.

[¶19] To generate an instruction on the competing harms justification, Demerchant needed to present evidence to support each of the following elements: "(1) the defendant or another person must be threatened with imminent physical harm, when viewed objectively; (2) the present conduct must be for the purpose of preventing a greater harm, or stated another way, the urgency of the present harm must outweigh the harm that the violated statute seeks to prevent; (3) the defendant must subjectively believe that his conduct is necessary; and (4) the defendant must have no reasonable, legal alternatives to the conduct." *Nobles*, 2018 ME 26, ¶ 32, 179 A.3d 910 (quotation marks omitted). We have explained that "to generate the defense there must be evidence that the defendant's conduct was *necessary* because of a *specific and imminent* threat of injury to the defendant or another leaving no reasonable alternative other than violating the law." *State v. Moore*, 577 A.2d 348, 350 (Me. 1990) (emphasis added). The competing harms defense is not applicable "merely because a defendant subjectively believes that a threat of imminent physical harm to person or property exists; it is requisite that it be shown *as a*

*fact* that such physical harm is imminently threatened." *State v. Poole*, 568 A.2d 830, 831 (Me. 1990) (emphasis added and quotation marks omitted); *see also State v. Kee*, 398 A.2d 384, 386 (Me. 1979) (noting that "the Legislature regards the 'circumstances' giving rise to the need for a choice of harms, i.e., the imminence of physical harm, as circumstances existing in fact").

[¶20] Inherent in the common law defense was a certainty of the danger sought to be avoided. "The common-law defense dealt with imminent dangers from obvious and generally recognized harms. *It did not deal with nonimminent or debatable harms*; nor did it deal with activities that the legislative branch of government had expressly sanctioned and found not to be harms." *Dorsey*, 395 A.2d at 857 (emphasis added) (citing Glanville Williams, *Criminal Law: The General Part* 729 (2d ed. 1961)).

[¶21] Here, there was no evidence that the people in the apartment posed an imminent physical threat to the victim. There was also no evidence that the victim was close enough to the woman who had her card to cause her any physical harm.[8] We therefore cannot say that there was a specific threat of

---

[8] We emphasize that imminent physical harm is required to invoke the justification, and an assault does not necessarily involve physical harm at all. *See* 17-A M.R.S. § 207(1)(A) (2025) ("A person is guilty of assault if . . . [t]he person intentionally, knowingly or recklessly causes bodily injury *or offensive physical contact* to another person." (emphasis added)).

Furthermore, under the competing harms justification, "the present conduct must be for the purpose of preventing a greater harm, or stated another way, the urgency of the present harm must

"imminent physical harm" that would justify the requested instruction. *See Nobles*, 2018 ME 26, ¶ 32, 179 A.3d 910 (requiring evidence that objectively establishes an imminent threat of physical harm); *Moore*, 577 A.2d at 350 (requiring that "the defendant's conduct [be] *necessary* because of a *specific and imminent* threat of injury to the defendant or another leaving no reasonable alternative other than violating the law" (emphasis added)); *Dorsey*, 395 A.2d at 857 (concluding that the common law necessity defense did not deal with debatable harms). Therefore, even when taking the evidence in the light most favorable to Demerchant, an instruction on the competing harms justification was not generated in this case.

The entry is:

Judgment affirmed.

---

Kurt C. Peterson, Esq. (orally), McKee Morgan, LLC, P.A., Augusta, for appellant Heath Demerchant

Todd R. Collins, District Attorney, and Matthew A. Hunter, Asst. Dist. Atty. (orally), Prosecutorial District 8, Presque Isle, for appellee State of Maine

---

outweigh the harm that the violated statute seeks to prevent." *State v. Nobles*, 2018 ME 26, ¶ 32, 179 A.3d 910 (quotation marks omitted). At trial and oral argument, Demerchant and his counsel acknowledged the physical contact between Demerchant and the victim. There is no indication that the harm Demerchant feared the victim would inflict upon the woman with the victim's card would be greater than the harm he committed—in his words—by "grab[bing] her jacket."

14

Aroostook County Unified Criminal Docket docket number CR-2023-40303